UPON REHEARING EN BANC
D. ARTHUR KELSEY, Judge.
Following the entry of a conditional guilty plea, the trial court convicted Keith I. Glenn of robbery and conspiracy to commit robbery. On appeal, Glenn argues that the trial court erred in denying his motion to suppress. A divided panel of this Court agreed with Glenn and vacated his convictions. Glenn v. Commonwealth, 48 Va.App. 556, 633 S.E.2d 205 (2006). At the Commonwealth’s request, we set aside our panel opinion and reconsidered the matter en banc. Finding no error in the trial court’s decision, we now affirm Glenn’s convictions.
I.
On appeal from a denial of a suppression motion, we review the evidence “in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.” Kyer v. Commonwealth, 45 Va.App. 473, 477, 612 S.E.2d 213, 215 (2005) (en banc) (citation omitted).
Believing Glenn had just robbed a man, police officers went to the home of Glenn’s grandparents where Glenn had been living for about two months. Glenn answered the door and was immediately arrested. The officers asked Glenn’s grandfather for permission to search his home. Unable to speak because of a medical condition, the grandfather nodded his head in agreement. The officers then asked the grandfather if Glenn paid rent. The grandfather shook his head no. When asked if Glenn was in fact his grandson, the grandfather nodded yes.
*417 The officers went to a bedroom identified by Glenn as the “room he slept in” and found, among other things, boxes containing his grandmother’s clothing. The officers then went to a second room, identified by Glenn as a room that he also slept in on occasion. There, the officers discovered a backpack on the floor. Nothing suggested to the officers the backpack was locked, used for any particular purpose, or owned by any particular person. The officers opened the backpack and found the robbery victim’s cell phone. When questioned later about the robbery, Glenn gave police a full confession.
Prior to trial, Glenn filed a motion to suppress seeking to exclude from evidence the cell phone found in the backpack.[1] At the suppression hearing, Glenn’s grandmother testified that the backpack belonged to Glenn. The grandmother, however, conceded that Glenn did not pay rent. Nor did he have exclusive access to, or control over, any room in the house. She agreed to the characterization of the first room searched as “Keith’s room” and “his bedroom.” The woman’s clothes in Glenn’s bedroom were hers, she admitted. She also said she kept a box of her clothes in the second room. There were no locks on the doors of either room. The police officers added that the doors of both rooms were open at the time of their search.
The trial court denied Glenn’s motion to suppress, reasoning that the grandfather’s consent to search was given “without reservation or qualification.” The scope of this consent, the court held, provided the officers with apparent authority to search the entire house and to open the backpack found during the search. Following the trial court’s denial of his motion to suppress, Glenn entered a conditional guilty plea pursuant to Code § 19.2-254 and appealed his convictions for *418 robbery in violation of Code § 18.2-58 and conspiracy to commit robbery in violation of Code § 18.2-22.
II.
Though the ultimate question whether the officers violated the Fourth Amendment triggers de novo appellate scrutiny, “we defer to the trial court’s findings of ‘historical fact’ and give ‘due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.’ ” Slayton v. Commonwealth, 41 Va.App. 101, 105, 582 S.E.2d 448, 449-50 (2003) (citation omitted). “To prevail on appeal, the defendant must show that the trial court’s denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error.” Id. at 105, 582 S.E.2d at 450 (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)).
In this case, Glenn argues that his grandfather’s consent to search the home did not extend to opening the backpack and examining its contents. The trial court disagreed, as do we.
Under settled Fourth Amendment principles, “a search authorized by consent is wholly valid.” Kyer, 45 Va.App. at 483, 612 S.E.2d at 218 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973)). “Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding.” Barkley v. Commonwealth, 39 Va.App. 682, 696, 576 S.E.2d 234, 241 (2003) (citation omitted).
Consent to search can be given by one with actual authority or apparent authority. Actual authority exists if the consenting party has a privacy interest in the premises to be searched, and thus, a concomitant right to waive that interest and authorize the search. See United States v. Matlock, 415 U.S. 164, 170-71, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). *419 Apparent authority exists if it merely appears to a reasonable officer that the consenting party has “authority over the premises.” Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990). When multiple parties share privacy interests in the premises, any one of them with “common authority over the premises” may consent to the search despite the lack of express concurrence by others possessing a shared privacy interest. Id. at 181, 110 S.Ct. at 2797.
Here, the trial court found that the grandfather owned the home and consented to its search. The police knew Glenn was staying in his grandfather’s home and confirmed Glenn did not have the status of a renter. From these facts, the police had ample reason to accept the grandfather’s consent to search the home and every room in it. No circumstances suggested to the police that Glenn had preserved a private enclave within the home or had somehow undermined the grandfather’s access to, or authority over, any space within his home. The police, therefore, crossed no Fourth Amendment boundary by searching either of the two rooms in which Glenn slept.
Perhaps so, Glenn argues, but that boundary was crossed when the police opened the backpack and looked inside. We disagree. Consent to search a space generally includes consent to search containers within that space. See Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991). This principle applies to automobiles, Wyoming v. Houghton, 526 U.S. 295, 302, 119 S.Ct. 1297, 1301, 143 L.Ed.2d 408 (1999), as well as physical premises, United States v. Melgar, 227 F.3d 1038, 1041-42 (7th Cir.2000). “The rule regarding containers found in automobiles applies also to containers found in premises.” 27 James W. Moore et al., Moore’s Federal Practice & Procedure § 641.44, at 641-151 (3d ed. 2006). “A grant of consent to search premises includes consent to search closed containers found within the premises unless the officers have reliable information that the container is not under the control of the person granting consent.” Id. (emphasis added); see also State v. Odom, 722 N.W.2d 370, *420 373 (N.D.2006) (“Specific consent to search every container is not needed when consent to search a room is given.”); see generally 4 Wayne R. LaFave, Search and Seizure § 8.3(g), at 183 (4th ed. 2004).
This conclusion stems from the observation that a “lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.” United States v. Ross, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 2170-71, 72 L.Ed.2d 572 (1982) (footnote omitted). The consent to search a home may reasonably include the “authority to open closets, chests, drawers, and containers” in which the object of the search may be found. Id. at 821, 102 S.Ct. at 2171; see also United States v. Ladell, 127 F.3d 622, 624 (7th Cir.1997). ‘When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.” Ross, 456 U.S. at 821, 102 S.Ct. at 2171 (footnote omitted). This reasoning “applies equally to all containers, as indeed we believe it must.” Id. at 822, 102 S.Ct. at 2171.
Practically speaking, “the real question for closed container searches is which way the risk of uncertainty should run.” Melgar, 227 F.3d at 1041. “Is such a search permissible only if the police have positive knowledge that the closed container is also under the authority of the person who originally consented to the search ... or is it permissible if the police do not have reliable information that the container is not under the authorizer’s control.” Id. (emphasis in original). We agree with the Seventh Circuit that it must be the latter. Any different approach
would impose an impossible burden on the police. It would mean that they could never search closed containers within *421 a dwelling ... without asking the person whose consent is being given ex ante about every item they might encounter. We note that there is no possibility of such a rule for automobile searches, because the Supreme Court has already authorized this type of container search in that context. See Ross, supra; Houghton, supra. Our conclusion here rests in part on the discussion in Houghton that indicates that the container rule rests on general principles of Fourth Amendment law that do not depend on the special attributes of automobile searches.
Melgar, 227 F.3d at 1042 (emphasis in original); see also Ladell, 127 F.3d at 624 (holding that a mother had “apparent authority to consent” to a search of her adult son’s bedroom, including a closed vinyl bag found in the bedroom).[2]
Reinforcing these traditional principles, Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 1520, 164 L.Ed.2d 208 (2006), addressed the underpinnings of the apparent authority doctrine as applied to the “co-occupant consent” situation. Randolph recognized that police must be permitted to rely on “widely shared social expectations” when discerning the apparent authority of one person to consent to a search of an area in which another has a dual privacy interest, particularly if the relationship between them falls into “some recognized hierarchy” apparent to the officers. Id. at 1521, 1523.
*422 “Disputed permission,” however, undermines that reliance because no reasonable officer could rely on one co-inhabitant’s apparent authority to speak for another when the person spoken for is, at that very moment, “expressly refusing consent” to the search. Id. at 1524, 1526. But if the spoken-for inhabitant does not object, the speaking inhabitant’s apparent authority remains secure. As the majority in Randolph conceded, “we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant’s permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.” Id. at 1527. This approach places the burden on the potential objector to assert his objection. For the very reason that
it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent, we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received.
Id. If this were not the rule, “every co-tenant consent case would turn into a test about the adequacy of the police’s efforts to consult with a potential objector.” Id. at 1527-28.
Consistent with these principles, we hold the police officers had reasonable grounds to believe that the grandfather’s consent to search his house included permission to open a backpack found on the floor in one of the rooms. The grandfather owned the home and had not encumbered his prerogatives as a homeowner by entering into any sort of contractual relationship with Glenn. His relationship with Glenn was not one of landlord-tenant, but of grandfather-grandson.
*423 Equally important, nothing about the backpack itself put the officers on notice that Glenn claimed an exclusive privacy interest in it. The backpack had no lock or, for that matter, anything else ostensibly designed to inhibit someone from opening it. The backpack was found on the floor of a room sometimes used by Glenn, not squirreled away in some secretive place within his principal bedroom. No identifying information on the backpack revealed who owned it, used it, or had access to it. The officers did not know who left it there or who, if anyone, intended to come back for it. Under such circumstances, the officers were not required to speculate—as Glenn implicitly suggests—that grandsons, but never grandfathers, use backpacks.
III.
Applying settled principles of apparent authority, we hold the grandfather’s unqualified consent to search his house included permission to open an unlocked, unidentified, unclaimed backpack found in plain view on the floor of one of its rooms.[3] Because the trial court correctly denied Glenn’s motion to suppress, we affirm his convictions for robbery and conspiracy to commit robbery.

Affirmed.

. Glenn also filed a motion to suppress his confession on Fifth Amendment grounds. The trial court overruled that motion. Pursuant to Code § 17.1-407(D), a three-judge panel of this Court denied Glenn's petition for appeal on this ground.

. The dissent comes to the opposite conclusion based on the belief that an individual has a "heightened expectation of privacy in the contents of a closed container.” Post at 425, 642 S.E.2d at 288; see also Glenn v. Commonwealth, 48 Va.App. 556, 569, 633 S.E.2d 205, 212 (2006). This proposition, however, was accepted only by the two-Justice dissent in Jimeno (from which the quoted language comes), not from the Jimeno majority's reasoning or holding. Florida v. Jimeno, 500 U.S. 248, 253, 111 S.Ct. 1801, 1805, 114 L.Ed.2d 297 (1991) (Marshall & Stevens, JJ., dissenting). We also find unpersuasive the dissent’s reliance on United States v. Chadwick, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484-85, 53 L.Ed.2d 538 (1977), given that it has been expressly abrogated (in favor of the reasoning in Ross) by California v. Acevedo, 500 U.S. 565, 573, 578, 111 S.Ct. 1982, 1990, 114 L.Ed.2d 619 (1991) (applying Ross and agreeing with the "Chadwick dissenters" who “predicted that the container rule would have ‘the perverse result of allowing fortuitous circumstances to control the outcome’ of various searches” (citation omitted)).

. Given our holding, we need not address the Commonwealth's additional argument that Glenn’s confession renders harmless any error associated with the suppression ruling. The grant of en banc review vacates the prior panel opinion in toto, including its holding that harmless error principles do not apply to appeals of conditional guilty pleas. We thus do not resolve the differing views expressed by the panel majority and dissent on this subject. Cf. Glenn, 48 Va.App. at 577-87, 633 S.E.2d at 216-21 (rejecting harmless error), with id. at 598-604, 633 S.E.2d at 226-29 (applying harmless error).