PRESENT: All the Justices

KEITH I. GLENN

v. Record Number 070796

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE G. STEVEN AGEE
January 11, 2008

FROM THE COURT OF APPEALS OF VIRGINIA

Keith I. Glenn appeals from the judgment of the Court of Appeals of Virginia, which affirmed his convictions for robbery and conspiracy to commit robbery in violation of Code §§ 18.2-58 and 18.2-22. On appeal, Glenn contends the denial of his motion to suppress certain evidence obtained in a search of his grandfather's house was reversible error. For the reasons set forth below, we will affirm the judgment of the Court of Appeals.

I. RELEVANT FACTS AND PROCEEDINGS BELOW

On January 8, 2004, a magistrate issued a warrant for Glenn's arrest in relation to a robbery in the City of Colonial Heights. The following day, officers of the Colonial Heights Police Department and the Sussex County Sheriff's Office attempted to execute the warrant at the address listed on the warrant. The occupants of the residence at that address directed the officers to another location, the home of Glenn's grandparents. Responding to the officers' knock, Glenn answered the front door of his grandparents' home and was immediately

arrested and advised of his Miranda rights.  The officers then entered the living room and asked Glenn's grandfather, Ernest Brooks, if he owned the home.  Brooks, unable to speak because of previous strokes, nodded in affirmation.  The officers similarly determined from Brooks that Glenn was living in the home but did not pay rent.  After obtaining this information, the officers asked Brooks for permission to search the house, which Brooks again granted with a nod of his head.[1]  The officers did not ask for Glenn's consent, but he was detained in the living room with Brooks during the officers' conversation and the subsequent search.

After Brooks consented to the search of his house, Glenn identified to the officers the bedroom where Glenn slept.  The door to that room was open and unlocked.  An officer searched the room and found, among other things, three mattresses propped against a wall and boxes of women's clothing, but no evidence relating to the robbery.  As the officer left the room, he looked down the hallway, where a second bedroom was located. Glenn then stated, "Oh, yeah, I sleep in that bedroom as well." The officer then entered the second bedroom, which was also open and unlocked, and saw a pair of pants on the bed and a closed backpack on the floor.  The backpack had no outward indicia of

_____

[1] Glenn presents no challenge to the grandfather's capacity to knowingly and intelligently grant voluntary consent for the search.

ownership such as a nametag or monogram and had no locking device.

The officer opened the backpack and discovered the robbery victim's cellular telephone and a wallet containing Glenn's identification and $45. Officers then escorted Glenn to the second bedroom where he identified the backpack as his own and volunteered that he found the cellular telephone on the ground in Colonial Heights. Glenn remained "calm" throughout the search and did not protest the search of the rooms or any containers in those rooms.

Prior to trial in the Circuit Court of the City of Colonial Heights, Glenn filed a motion to suppress the evidence found in the backpack, contending that neither his "grandfather nor any third party is capable to assent and/or waive" Glenn's Fourth Amendment rights regarding his personal property in a closed container in his bedroom. Glenn's grandmother testified at the hearing that Glenn lived in the home without paying rent, but that Glenn had keys to the home. She further testified that she could enter the two rooms searched at any time and that the women's clothes found in Glenn's bedroom belonged to her. Glenn's grandmother also testified that the backpack belonged exclusively to Glenn and was never used by her or Brooks.

The circuit court found that Brooks consented to the search of his house "without reservation or qualification" and that

"[Glenn] was present at the search, observed the search and took no action to countermand his grandfather's permission by advising the police that he objected to the search of that portion of the residence he later claimed he occupied." The circuit court then denied the motion to suppress. Glenn subsequently entered a conditional guilty plea pursuant to Code § 19.2-254, reserving his right to appeal the issues raised in his suppression motion. The circuit court accepted the plea, found Glenn guilty, and sentenced him to seven years' active incarceration.

On appeal in the Court of Appeals, a divided panel of that court reversed his convictions, holding that the circuit court erred by not granting Glenn's motion to suppress. Glenn v. Commonwealth, 48 Va. App. 556, 563, 633 S.E.2d 205, 209 (2006). However, on rehearing en banc, Glenn's convictions were affirmed. Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007). The court held that "the police officers had reasonable grounds to believe that the grandfather's consent to search his house included permission to open a backpack found on the floor in one of the rooms." Id. at 422, 642 S.E.2d at 286. This conclusion was based in part on the fact that "[n]othing about the backpack itself put the officers on notice that Glenn claimed an exclusive privacy interest in it." Id. at 423, 642 S.E.2d at 286 (emphasis in

4

original).  Although the police had no "positive knowledge that the closed container" was Brooks', they did not have "reliable information that the container" was not under Brooks' control. Id. at 420, 642 S.E.2d at 285.  The Court of Appeals also found support for its conclusion in the United States Supreme Court's decision in Georgia v. Randolph, 547 U.S. 103 (2006), because Glenn was present at the time of the search, but failed to object.  We awarded Glenn this appeal.

## II. STANDARD OF REVIEW

Appellate review of a trial court's denial of a defendant's motion to suppress is de novo when the defendant claims that the evidence sought to be suppressed was seized in violation of the Fourth Amendment.  Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002).  In performing this review, we consider the evidence "in the light most favorable to the Commonwealth," McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001), and "accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004); see also Burns v. Commonwealth, 261 Va. 307, 313-14, 541 S.E.2d 872, 877-78 (2001).  The defendant bears the burden of establishing that the denial of his suppression motion was reversible error. Murphy, 264 Va. at 573, 570 S.E.2d at 838.

## III. ANAYLSIS

5

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures in a person's home are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). However, courts recognize exceptions to this general rule in several circumstances, including when a party voluntarily consents to the search. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) ("It is . . . well settled that one of the specifically established exceptions to the requirements of . . . a warrant and probable cause is a search that is conducted pursuant to consent."). As in any Fourth Amendment review, the touchstone of our analysis is the reasonableness of the search under the circumstances. E.g., United States v. Knights, 534 U.S. 112, 118-19 (2001); Illinois v. Rodriguez, 497 U.S. 177, 185 (1990); Hill v. California, 401 U.S. 797, 803-04 (1971)).

Depending on the circumstances, a search may be deemed reasonable when conducted pursuant to voluntary consent offered not by the defendant himself but by a third party who shares access to the premises or object being searched with the defendant.

> The authority which justifies the third-party consent
> . . . rests . . . on mutual use of the property by
> persons generally having joint access or control for
> most purposes, so that it is reasonable to recognize
> that any of the co-inhabitants has the right to permit

6

> the inspection in his own right and that the others
> have assumed the risk that one of their number might
> permit the common area to be searched.

United States v. Matlock, 415 U.S. 164, 171 n.7 (1974); see also

Schneckloth, 412 U.S. at 245; Frazier v. Cupp, 394 U.S. 731, 740

(1969).

Brooks, as the owner of the home, possessed the authority

to consent to a search of his house, including a search of the

rooms used by Glenn, a houseguest.  On appeal, Glenn does not

challenge Brooks' authority to consent to a search of the entire

house, including the room in which the backpack was located.[2]

Rather, Glenn contends the Court of Appeals and circuit court

erred in denying the motion to suppress because the third party,

Brooks, had no authority to give consent to a search of a closed

container of Glenn's personal property.  As the search of the

fixed premises, the home, was proper, the issue before us is

narrowed to whether there was a constitutionally valid consent

for the search of a closed container within that house that the

evidence later established belonged to Glenn rather than his

grandfather.  In other words, regardless of Brooks' authority to

---

[2] See United States v. Block, 590 F.2d 535 (4th Cir. 1978), in which the United States Court of Appeals for the Fourth Circuit determined that a mother "clearly had authority to permit inspection" of her son's bedroom because the son was "a mere guest occupant of the room in his mother's home, and the mother had the normal free access that heads of household commonly exercise in respect of the rooms of family member occupants."  Id. at 541.

authorize the search of his house, did that authority extend to closed containers located therein?

Although involving the search of an automobile and not a home, the Supreme Court enunciated basic Fourth Amendment principles applicable to the search of a closed container in the seminal case of United States v. Ross, 456 U.S. 798 (1982):

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. . . . When a legitimate search is under way . . . nice distinctions between closets, drawers, and containers, in the case of a home . . . must give way to the interest in the prompt and efficient completion of the task at hand.

Id. at 820-21.

In Rodriguez, the Supreme Court upheld the validity of the search of an apartment when the officers incorrectly executed the search but acted with objective reasonableness based on the facts known to them at the time of the search.

> [I]n order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by . . . the police officer conducting a search or seizure under one of the exceptions to the warrant requirement [] is not that they always be correct, but that they always be reasonable.
>
> . . . .
>
> As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . .

8

> warrant a man of reasonable caution in the belief that
> the consenting party had authority over the premises?

Rodriguez, 497 U.S. at 185, 188 (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (internal quotation marks omitted).

Glenn's argument on appeal is essentially that any conclusion by the police that Brooks had the authority to consent to searching the backpack was objectively unreasonable as a matter of law. This is so, Glenn argues, because the police had no specific or direct knowledge, at the time of the search, that the backpack either belonged to Brooks or that Brooks had access to it. Glenn contends this is particularly relevant because he told the police that he used the room in which they found the backpack. In Glenn's view, even if Brooks did voluntarily consent to a search which included the backpack, that consent was a nullity because Brooks had no authority over that item.

Glenn's argument points to the distinction, recognized by the Court of Appeals, that a person authorizing a search by consent can be either a person with actual or apparent authority over the object of the search.

> A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes. Even where actual authority is lacking, however, a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent.

9

> Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search.

United States v. Andrus, 483 F.3d 711, 716-17 (10th Cir. 2007) (internal quotation marks and citations omitted).  Had Brooks been the only occupant of his residence, this distinction would be irrelevant.  However, because there were multiple occupants, each with his or her own potentially distinct privacy interests, the question of authority is directly relevant to the reasonableness of the police search.

As the evidence at trial reflected, Brooks did not, in fact, have actual authority over the backpack.  But that determination of a lack of actual authority after the search is not dispositive of the reasonableness inquiry.  If the consenting party had the apparent authority to consent to the search, as it appeared to an objectively reasonable police officer, then the consent is valid for Fourth Amendment purposes as to another holder of a privacy interest in the object to be searched.  Andrus, 483 F.3d at 722.  In other words, if Brooks reasonably appeared to have the authority to consent to a search of the backpack, that apparent authority is sufficient to vitiate any Fourth Amendment claim by Glenn.

Glenn is correct that the police did not affirmatively know that Brooks owned or used the backpack at the time of the search.  On the other hand, nothing in the record shows the police knew that Brooks did not own or use the backpack.  Had the backpack borne Glenn's name or other identifying marks, or had the backpack been locked or secreted among possessions which were exclusively Glenn's, there would likely be few circumstances where an objectively reasonable police officer could conclude Brooks had the authority to consent to a search of the bag.  However, none of those circumstances exist in this case.  In fact, the opposite is true.  The backpack bore no indicia of ownership, evidenced no limitations on access, had no characteristics that reflected a use by reason of age or gender, and was located in a place open to all occupants of the house.

The circumstance facing the police officer who found the backpack in a room to which he was directed by Glenn, without any objection to a search of its contents, was whether Brooks' consent to search reasonably included the bag.  We hold it was objectively reasonable for the police officer to conclude Brooks' consent to search included the authority to consent to a search of the backpack.

In reaching our decision, we are cognizant that some ambiguity attended the ownership and ability to access the backpack as the police officer seized and searched it.  As noted

11

above, it bore no identifying indicia and could as logically have belonged to Brooks as it could to Glenn. The backpack was located in a room that the police knew Glenn used, but which was also open to the grandparents. The fact that evidence at the suppression hearing reflected that the backpack belonged to Glenn has no effect on determining the reasonableness of the grandfather's apparent authority for the search at the time the police first found the backpack as none of those facts were known by the police at the time of the search.

The question becomes whether the latent ambiguity about who could access the backpack renders a search unreasonable until all ambiguity is removed. We find the Court of Appeals' reference to the reasoning of the United States Court of Appeals for the Seventh Circuit in United States v. Melgar, 227 F.3d 1038 (7th Cir. 2000), convincing. That court's analysis is instructive as that case also involved the authority to search a closed container belonging to a person other than the one who authorized a general search of the premises where the container was located.

In Melgar, police obtained consent from Rita Velasquez to search the hotel room she rented. At the time of the search, several other persons were in the room, including the defendant, Ms. Melgar. Police found and searched a purse in the room which "had no personalized markings on the outside." The contents

12

showed the purse belonged to Melgar and contained incriminating items that led to her arrest.  Melgar claimed her Fourth Amendment rights were violated because Velasquez had no authority to consent to a search of her purse.  Id. at 1040.

Even though the police did not affirmatively know the purse belonged to Melgar at the time of the search, the court concluded it was not objectively unreasonable for the police to conclude that Velasquez, the renter of the room, had the authority to authorize not only a search of the room, but of the unmarked purse.

> [T]he real question for closed container searches is which way the risk of uncertainty should run.  Is such a search permissible only if the police have positive knowledge that the closed container is also under the authority of the person who originally consented to the search (Melgar's view), or is it permissible if the police do not have reliable information that the container is not under the authorizer's control.  We are not aware of any case that has taken the strict view represented by the first of these possibilities.
>
> . . . .
>
> [W]e conclude that the scope of [the renter's] consent encompassed [a] right to look into this container.
> A contrary rule would impose an impossible burden on the police.  It would mean that they could never search closed containers within a dwelling (including hotel rooms) without asking the person whose consent is being given ex ante about every item they might encounter.  We note that there is no possibility of such a rule for automobile searches, because the Supreme Court has already authorized this type of container search in that context.  Our conclusion here rests in part on the discussion in Houghton that indicates that the container rule rests on general

13

principles of Fourth Amendment law that do not depend on the special attributes of automobile searches.

Id. at 1041 (citing Ross, 456 U.S. at 820-821 and Wyoming v. Houghton, 526 U.S. 295, 302 (1999)) (emphasis in original).

The rationale in Melgar reflects a correct balancing of the competing interests involved in determining the reasonableness of a search in a Fourth Amendment context. Like the hotel room in Melgar, there was a valid consent to search the Brooks' house in the case at bar. It was as objectively reasonable for the police to believe Velasquez had the authority to authorize a search of the unmarked purse in her room as it was for the police to believe Brooks had the authority to consent to a search of the unmarked backpack in his house. The police had no basis to believe that the backpack did not belong to Brooks or that he did not use it, just as they had no basis to believe the purse did not belong to Velasquez. Contrary to Glenn's implication that the police should infer the backpack was the possession of the younger person, nothing in the record as of the time of the search would support that inference. To the contrary, it would be common knowledge that the elderly, such as the disabled grandfather, utilize backpacks or similar devices on their wheelchairs, walkers, or otherwise as an aid for their

infirmities.[3]  It was no less likely for the police to reasonably

conclude the unidentified, unlocked, backpack was as open to

Brooks in his own house as it was to Glenn, the houseguest.  As

did the court in Melgar, we conclude it was objectively

reasonable for the police to conclude that the person consenting

to the search of the premises, Brooks, appeared to have the

authority to authorize the search of the backpack within the

rooms open to him in his own home.

Our conclusion is further bolstered by the recent decision

of the United States Supreme Court in Georgia v. Randolph, 547

U.S. 103 (2006).  While Randolph did not involve the search of a

closed container, that case established important Fourth

Amendment parameters in determining the reasonableness of

consent to search where more than one person appears to have

---

[3] Glenn's citation to the decision of the Indiana Supreme
Court in Krise v. State, 746 N.E.2d 957 (2001), does not support
his position.  In that case, a boyfriend and girlfriend occupied
the same apartment.  Police removed the girlfriend on an
unrelated warrant and obtained consent from the boyfriend to
search the apartment.  During the search, the police discovered
a purse and seized contraband in it and charged the girlfriend
with its possession.  The Indiana Supreme Court correctly held
police could not have reasonably believed the boyfriend had the
authority to consent to a search of the girlfriend's purse.  "We
also find that the [prosecution] failed to justify the search on
the basis of apparent authority. At the time [the officer]
decided to search Krise's purse, he knew that the handbag was a
woman's purse and that Krise was the only woman living in the
house."  Id. at 971.
    No such identifying factor is present in the case at bar to
affect the determination of the reasonableness of the appearance
of Brooks' authority to consent to a search of the backpack.

15

some authority or reasonable expectation of privacy in the premises to be searched. While Matlock had established that a co-occupant could grant voluntary consent to a search of premises over which she had material rights with an absent co-occupant, Randolph verified such a consent was ineffective if the other co-occupant was indeed present and objected. The Supreme Court then further explained that if the search is otherwise objectively reasonable, a potential objector who raises no objection to the search when he has the opportunity to do so "loses out."

> [W]e have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.
> This is the line we draw, and we think the formalism is justified. . . . [W]e think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received.

Id. at 121-22.

The Supreme Court's Randolph analysis aptly applies on the facts of this case. Glenn could have objected to the search of either of the bedrooms, but failed to do so even though he was in conversation with the police officers before and during the search. In fact, it was Glenn who directed the police to the

16

bedroom in which the backpack was located, but without any hint of an objection to its being searched.[4]  Insomuch as Brooks' apparent authority to consent to the search was otherwise objectively reasonable, Glenn "loses out" due to his failure to make any objection despite ample opportunity to do so.[5]

## IV. CONCLUSION

The facts available to the officers at the time of the search of the Brooks house were sufficient to lead an objectively reasonable police officer to believe that Brooks had authority to consent to a search of the backpack.  Accordingly, there was no error in denying Glenn's motion to suppress.

We will therefore affirm the judgment of the Court of Appeals.

Affirmed.

---

[4] Cf. United States v. Jones, 356 F.3d 529, 534-35 (4th Cir. 2004) ("[T]he scope of a consent search is not limited only to those areas or items for which specific verbal permission is granted. Consent may be supplied by non-verbal conduct as well. . . . [The defendant] confirmed the propriety of the search by not objecting . . . .").

[5] Glenn's citation to Minnesota v. Olson, 495 U.S. 91 (1990), is without merit.  Olson stands for the proposition that a houseguest, like Glenn, has standing to raise a Fourth Amendment challenge to the search of his property within the premises where he has guest privileges.  Id. at 100.  Glenn's standing is not at issue in this case; he clearly has standing to raise the Fourth Amendment issue he argues, notwithstanding any potential waiver of that argument under Randolph.  However, Glenn's standing has no relevance to a decision on the merits as to whether it was objectively reasonable to conclude Brooks had apparent authority to consent to a search of the backpack.