COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


ROBERT LEE McLAUGHLIN, JR.

OPINION BY
v.        Record No. 1187-14-1         JUDGE RANDOLPH A. BEALES
NOVEMBER 17, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge[1]

Aleasa D. Leonard, Senior Assistant Public Defender, for appellant.

Steven A. Witmer, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Robert L. McLaughlin, Jr. (appellant) was convicted of one count of felony possession of a

firearm by a convicted felon in violation of Code § 18.2-308.2.  Appellant argues on appeal that the

trial court erred when it denied appellant's motion to suppress the evidence because the probation

officer had no authority to enter appellant's house or bedroom – and was otherwise not in a position

to lawfully see the gun.  For the reasons below, we affirm the ruling of the trial court.

I. BACKGROUND

We consider the evidence on appeal "'in the light most favorable to the Commonwealth as

we must since it was the prevailing party'" in the trial court.  Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004)).  On October 22, 2013, prior to his trial for possession of a

---

[1] The Honorable H. Thomas Padrick, Jr. presided over and ruled on appellant's
suppression motion that is the subject of appellant's assignment of error.

firearm by a convicted felon, appellant moved to suppress evidence obtained pursuant to a probation transfer investigation conducted by his probation officer.

In April 2012, appellant was put on supervised probation in Virginia Beach – soon after his release from incarceration for a previous offense. Appellant executed a document with the Virginia Beach Adult Probation intake workers, which in relevant part states, "I will permit the Probation and Parole Officer to visit my home and place of employment." The probation officer testified that it was office procedure to provide this document to a new probationer – and for someone in the office to review the document with the probationer. At some point during his probationary term, appellant moved to Norfolk, and his supervision was transferred to Norfolk Adult Probation. Appellant's Norfolk probation officer went to visit appellant's reported location, and found that it was an invalid address. Appellant called his Norfolk probation officer on October 31, 2012 and told her that he and his sister were living in a trailer located in Virginia Beach. Appellant's supervision was then transferred back to Virginia Beach Adult Probation.

On November 8, 2012, a Virginia Beach probation officer, Tiffany Franklin (Officer Franklin),[2] accompanied by a surveillance officer, went to appellant's reported address in Virginia Beach to conduct a transfer investigation. Prior to conducting this visit, Officer Franklin had never met appellant. She described the transfer investigation in the following manner:

> We go out to the home, view the home. If we can, speak with the person or speak with someone who is at the residence to verify that that person does, in fact, reside there. Usually it entails going in, viewing the home, making sure that they are really there, not just receiving mail like a lot of folks. . . . I had one where it was an empty lot that I went out to; so that's why I'm asking.

_____

[2] The Commonwealth stipulated at the suppression hearing that Officer Franklin was acting as a law enforcement officer during the home visit ("We concede that Ms. Franklin was acting as an agent of the Commonwealth as a probation officer that day.").

When Officer Franklin arrived, an adult female, Alicia Young-Sanchez (Young), answered the door and confirmed to Officer Franklin that appellant lived there, but stated that he was at work at the time. Young allowed the probation officer inside the trailer, identifying herself as Alicia. Officer Franklin noted that Young had two guests visiting inside the trailer with her—another woman and a child. Officer Franklin noticed that the two women were "kind of hanging out," chatting, and having a drink. Officer Franklin did not observe any luggage belonging to Young, or any other indicators that she was only an overnight guest. Instead, Officer Franklin said, "To my understanding I have written in my notes that [Young] was the homeowner . . . ." Appellant's landlord testified at the suppression hearing that Young was not on the official lease although this information was not available to Officer Franklin at the time she conducted her transfer investigation. Appellant put on no other evidence to rebut the assertion that Young lived at the residence. The trial court found that Young lived in the trailer, could enter and leave as she pleased, and could have guests over.

Before Officer Franklin went through the front door into the home's main room, she asked Young if she could view appellant's bedroom and stated that Young assented. As Officer Franklin testified, "I asked to view his bedroom. She [Young] said that was fine." Young went across the room and opened the door to the bedroom. Upon opening the door and going into the bedroom, Young reacted in surprise. Officer Franklin came up and looked past her into the bedroom, and saw someone she later identified as appellant asleep in the bed. Young then went over and awakened appellant. Officer Franklin testified that, as appellant awakened, he glanced at the stand beside his bed, which caught her attention. She then looked as well, and saw an open beer, a pistol handgun, a pair of jeans, and a baseball cap lying on the stand. At no point did appellant or Young tell Officer Franklin to leave the room. Appellant told Officer Franklin that

- 3 -

the beer, jeans, and the hat were his and that his prints might be on the gun, but that the gun was not his.

On December 18, 2013, after allowing both parties time to brief the issue, the trial court found:

> The court, weighing the evidence that was presented, indicated that Ms. Snachez[sic] Young lived in the trailer, that she could enter and leave as she pleased, she could have guests over, and that she had the authority to enter the defendant's room. From the evidence, it appears, and the court finds, that it was reasonable for Ms. Franklin to believe that she had authority to consent to the search.

## II. ANALYSIS

### Standard of Review

"Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672-73, 594 S.E.2d 595, 598 (2004) (citing McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001)).

### General Fourth Amendment Principles

The Fourth Amendment protects individuals from unreasonable searches and seizures in their home. "[A] search and seizure conducted without a warrant issued upon probable cause is *per se* unreasonable." Crosby v. Commonwealth, 6 Va. App. 193, 197, 367 S.E.2d 730, 733 (1988). However, it will not be unreasonable when law enforcement officers perform a search based on consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In fact, the Supreme Court has stated,

> In a society based on law, the concept of agreement and consent should be given a weight and dignity of its own. Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding.

United States v. Drayton, 536 U.S. 194, 207 (2002).

Consent may be obtained either from the individual whose property is being searched or from a third party with common authority over the premises. Jones v. Commonwealth, 16 Va. App. 725, 727, 432 S.E.2d 517, 518-19 (1990). The standard for determining whether a third party has actual authority to consent is the following:

> The authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

United States v. Matlock, 415 U.S. 164, 171 n.7 (1974).

"[E]ven if that party does not have actual authority to consent, apparent authority may be sufficient [to justify a search without a warrant] if the facts surrounding the situation would have led a reasonable officer to conclude that the person providing consent had the requisite authority." Jones, 16 Va. App. at 727-28, 432 S.E.2d at 519 (citing Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)). Said another way, "[w]hether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search." Glenn v. Commonwealth, 275 Va. 123, 132-33, 654 S.E.2d 910, 914-15 (2008) (quoting United States v. Andrus, 483 F.3d 711, 716-17 (10th Cir. 2007)).

<u>Young's Apparent Authority to Consent to Entry Into the House</u>

Courts have long since recognized that "'[i]nherent in the very nature of probation is that probationers "do not enjoy the absolute liberty to which every citizen is entitled,"' 'but only . . . conditional liberty properly dependent on observance of special [probation conditions].'" <u>Murry v. Commonwealth</u>, 288 Va. 117, 123-24, 762 S.E.2d 573, 577 (2014) (first quoting <u>United States v. Knights</u>, 534 U.S. 112, 119 (2001); and then quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480 (1972)) (bracketed phrase in original quote). In this case, appellant signed a probation condition allowing probation officers to engage in "home visits." Officer Franklin had already received this signed condition when she went to visit appellant. While the Supreme Court of Virginia has not articulated exactly what a "home visit" does encompass, it has found that a home visit without more specificity does not operate as a full Fourth Amendment waiver. <u>Megel v. Commonwealth</u>, 262 Va. 531, 536, 551 S.E.2d 638, 641 (2001). Thus, when Officer Franklin arrived at appellant's residence, the following evidence was available to her: (1) appellant provided a home address in Virginia Beach to his probation officer and told his Norfolk officer that he and his sister were living at that address; (2) appellant signed a provision allowing probation officers to visit;[3] (3) when Officer Franklin went to that residence, Young was an adult female who answered the door; (4) Young had guests visiting her; (5) Young appeared to be living there; and (6) Young allowed Officer Franklin into the house. All this evidence is such that a reasonable officer in Officer Franklin's position would have thought that Young had actual authority to allow her into the house. As such, we find that Young had apparent authority to allow Officer Franklin into the house.

---

[3] This provision seems to grant the probation officer actual authority to visit and at least enter the home.

<u>Young's Apparent Authority to Consent to Entry Into the Bedroom</u>

In <u>Glenn v. Commonwealth</u>, the Supreme Court of Virginia found that a grandfather had apparent authority to consent to search a backpack within a bedroom in the grandfather's home, despite the fact that his grandson had been using the bedroom. <u>Glenn</u>, 275 Va. 123, 654 S.E.2d 910. The issue for the Court to consider was the following: "As the search of the fixed premises, the home, was proper, the issue before us is narrowed to whether there was a constitutionally valid consent for the search of a closed container within that house . . . ." <u>Id.</u> at 131, 654 S.E.2d at 914. In <u>Glenn</u>, the grandfather (who owned the home) allowed the police into his house and allowed the police to search it. <u>Id.</u> at 128, 654 S.E.2d at 912. Two bedrooms in the home were searched, and, in the second bedroom, the police found and searched a closed, unmarked backpack. <u>Id.</u> Appellant argued on appeal that the police did not have apparent authority to search the backpack as a matter of law, because the police did not know whether the backpack belonged to appellant or the grandfather, but they did know that the bedroom was where appellant had been staying. <u>Id.</u> at 132, 654 S.E.2d at 914. Appellant was present during the police search, and did not make any objections at the time of the search. <u>Id.</u> at 128, 654 S.E.2d at 912.

Ultimately, the Supreme Court of Virginia held, "The facts available to the officers at the time of the search of [the grandfather's] house were sufficient to lead an objectively reasonable police officer to believe that [the grandfather] had authority to consent to a search of the backpack." <u>Id.</u> at 137-38, 654 S.E.2d at 917. Thus, in <u>Glenn</u>, the Court did not question the grandfather's actual authority to consent to a search. The Court, in evaluating whether the grandfather had authority over a room in which he was not sleeping, looked to the grandfather's assertion that the home belonged to him as a way of showing a sufficient connection to the bedroom, even though the grandfather himself was not sleeping in that bedroom. Similarly here,

the trial court found that Young lived in the house, and she could have guests over as well as come and go as she pleased.

Appellant contends that, because Young was not on the lease, Young did not have actual or apparent authority over the premises. However, as the United States Supreme Court has noted, "The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes . . . ." Matlock, 415 U.S. at 172; see also Georgia v. Randolph, 547 U.S. 103 (2006). Considering this principle in conjunction with the decision in Glenn, it is clear that ownership is not dispositive. An individual can have control and access to the premises without having a property interest in the house. As a practical matter, a probation officer cannot always be required to determine who is on a lease in every probation transfer investigation, as appellant's counsel acknowledged at oral argument. Nor can a probation officer cross-examine every individual she comes across in a transfer investigation to ensure that appearances mirror reality.

Therefore, based on the trial court's findings of fact that Young could come and go as she pleased, "that she had the authority to enter the defendant's bedroom,"[4] and could have guests over to the home – findings supported by the evidence in the record, we conclude that Young had a sufficient relationship to the premises to justify a reasonable person in Officer Franklin's position in forming the opinion that Young had authority to take her into appellant's bedroom.

---

[4] The trial court found, "[Young] had the authority to enter the defendant's room." This statement was not a legal conclusion, but, based on the context in which the trial court said it, a factual finding regarding Young's use of the premises.

<u>The Gun's Position in Plain View in the Bedroom</u>

Once in the bedroom, Officer Franklin saw the gun sitting out on top of a bedside table.[5]

> The rationale of the plain-view doctrine is that if contraband is left
> in open view and is observed by a police officer from a lawful
> vantage point, there has been no invasion of a legitimate
> expectation of privacy and thus no "search" within the meaning of
> the Fourth Amendment – or at least no search independent of the
> initial intrusion that gave the officers their vantage point.

<u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993). "An officer may seize an item in plain view if the officer is lawfully in a position to see the item and it is 'immediately apparent that the item may be evidence of a crime.'" <u>Commonwealth v. Ramey</u>, 19 Va. App. 300, 303, 450 S.E.2d 775, 777 (1994) (quoting <u>Carson v. Commonwealth</u>, 12 Va. App. 497, 501, 404 S.E.2d 919, 921 (1991)). Thus, because a person with apparent authority admitted the probation officer to the house and the bedroom, the probation officer was lawfully in a position to observe the gun.[6] Because the gun was in plain view in the bedroom, it was immediately apparent that the gun could be evidence of possession of a firearm by a convicted felon. Therefore, the trial court was correct in denying the motion to suppress.

---

[5] Appellant has not argued in the trial court or on appeal that there was ever revocation of consent.

[6] This Court notes that there are three separate grounds for denying appellant the suppression remedy he seeks: (1) The trial court found that Young lived in the trailer, could enter and leave as she pleased, and could have guests over. Consent may be obtained either from the individual whose property is being searched or from a third party with common authority over the premises. <u>Jones</u>, 16 Va. App. at 727, 432 S.E.2d at 518-19. (2) "Apparent authority may be sufficient [to justify a search without a warrant] if the facts surrounding the situation would have led a reasonable officer to conclude that the person providing consent had the requisite authority." <u>Id.</u> at 727-28, 432 S.E.2d at 519 (citing <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 181 (1990)). (3) As the United States Supreme Court has repeatedly emphasized, suppression of the evidence is a "last resort." <u>Hudson v. Michigan</u>, 547 U.S. 586, 591 (2006). <u>See also</u> <u>Davis v. United States</u>, 131 S. Ct. 2419 (2011); <u>Herring v. United States</u>, 555 U.S. 135 (2009). Thus, even if this evidence had been gathered in violation of the Fourth Amendment, it would not be suppressed here because the trial court below made a factual finding that the probation officer's actions were "for lack of a better term, innocent." Suppressing the evidence here would not serve the larger purpose of deterring unlawful police conduct in the future. <u>Id.</u>

### III. CONCLUSION

Applying the trial court's factual findings to Fourth Amendment principles, this Court holds that the trial court did not err in finding that Officer Franklin had apparent authority to enter the house and to go into the bedroom with Young, where the officer saw the gun in plain view. Accordingly, we affirm appellant's conviction for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.

<u>Affirmed.</u>