COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued by videoconference

PUBLISHED

MICHAEL MORENO, S/K/A
 MICHEL MORENO

v.      Record No. 1801-19-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
JUNE 15, 2021

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge Designate

Robert M. Vernail for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Michael Moreno, s/k/a Michel Moreno ("Moreno") challenges his conviction for

first-degree murder and felony hit and run. In support of this challenge, Moreno contends that the

Circuit Court of Loudoun County ("trial court") erred when it failed to suppress evidence obtained

from a warrantless "ping" of Moreno's cell phone. Finding no error, we affirm the convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth,

295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). In doing so,

we discard any of appellant's conflicting evidence, and regard as true all credible evidence

favorable to the Commonwealth and all inferences that may reasonably be drawn from that

evidence. Id. at 473.

In late 2017, Moreno's mother was diagnosed with lung cancer. During the time that Moreno's mother was hospitalized, his sister Nancy Moreno ("Nancy") spent almost all of her time at the hospital. Moreno disapproved of the traditional medicine being utilized to treat his mother and supported alternate treatments. Nancy, acting as their mother's power of attorney, disagreed with Moreno's suggestions for non-traditional treatment and continued their mother's treatment at the hospital. As their mother's condition continued to deteriorate, Moreno accused Nancy of killing their mother by refusing to accept his suggestions.

When their mother was released from the hospital in March 2018, Nancy moved into the house with Moreno and their mother to continue to care for her. On March 30, 2018, their mother succumbed to her illness. Nancy remained in the home to look after Moreno because he did not have a job.

Moreno told multiple people that he blamed Nancy for their mother's death and claimed that Nancy had "murdered" his mother. On Saturday, July 21, 2018, Nancy had to travel for work and was departing from Dulles airport at 8:30 a.m. that morning. Nancy loaded her luggage into her Blue Toyota RAV 4 licensed BCNGU around 6:55 a.m. Moreno drove the RAV 4 with Nancy riding upfront, in the passenger seat. Their house was located only about fifteen minutes from Dulles airport.

Moments before the car was to arrive at the airport, Moreno stopped the RAV 4 on the shoulder of the road. Nancy then exited the car and began walking toward the airport. Larry Washburn ("Washburn") testified that as he was driving his vehicle on Innovation Avenue in Loudoun County, he saw Nancy's RAV 4 sitting on the shoulder of the road with Nancy walking on the shoulder carrying a travel bag. Thinking that the car was out of gas, Washburn pulled ahead of the RAV 4 onto the shoulder of the road and waited on Nancy to see if she needed a ride.

Through his rearview mirror, Washburn witnessed the RAV 4 accelerate directly at Nancy, running over her, leaving her body on the ground. The RAV 4 continued onto the road, dragging Nancy's luggage. Washburn then began following the RAV 4 while flashing his headlights and honking his horn in an attempt to get the driver to stop. The RAV 4 did not stop which prompted Washburn to note the license plate of the vehicle, BCNGU, and call 911 to report what he had seen. While on the phone with the 911 operator, Washburn pulled alongside the RAV 4 so that he could see the driver.

Another motorist, Jonathan McCoy ("McCoy"), also saw the incident on the shoulder of the road. McCoy similarly noted the license plate BCNGU and reported the same to 911. McCoy lost sight of the RAV 4 after following the vehicle for a short period of time.

Paramedics arrived at the scene and transported Nancy to Reston Hospital. The trauma surgeon on duty testified that Nancy had numerous broken bones in her legs, chest, back, skull, and face. Upon arrival, Nancy was in a coma and bleeding inside her brain. Nancy died a few hours later from multiple blunt force injuries.

Loudoun County Detective Shannon Coderre ("Coderre") received the information about the collision from the 911 dispatcher and learned that the vehicle bearing the license plate BCNGU belonged to the victim. Coderre gathered DMV information about family members and determined that Moreno fit the description of the driver that Washburn had provided.

After determining that Moreno was a suspect, Sergeant Michael Grimsley ("Grimsley") prepared a search warrant for Moreno's home. Coderre called and texted Moreno's cell phone, but Moreno did not respond. When Moreno did not respond, Grimsley asked Moreno's cell phone carrier for an emergency ping of the cell phone's location in an effort to locate Moreno. The carrier provided Loudoun County officers with real-time Cell Site Location Information ("CSLI") of Moreno's cell phone.

Based on the CSLI provided, Loudoun County officers learned that Moreno was at the Live Casino in Anne Arundel County, Maryland. Surveillance video at the casino confirmed that Nancy's Toyota RAV 4 was at that location. When Grimsley located Moreno at the casino Moreno asked, "how's my sister?"

Inside the RAV 4, Loudoun County officers found a box of Nancy's jewelry and receipts for three bottles of motor oil that had been purchased after the collision. Nancy's cell phone was collected and included several texts from Moreno accusing Nancy of killing their mother.

Moreno filed a motion to suppress evidence in which he claimed that law enforcement officers violated his Fourth Amendment protections when they received the real-time CSLI data from Moreno's wireless provider without first obtaining a search warrant. Moreno argued that while Carpenter v. United States, 138 S. Ct. 2206 (2018), had addressed historical CSLI, not real-time data, Carpenter's holding applied to real-time data. Moreno sought to exclude physical evidence and statements derived from the search.

The Commonwealth argued that the police already had the license plate information and were aware that the car belonged to Nancy and that the driver had fled the scene. Additionally, the police were already aware that Moreno's photo fit the description of the driver provided by the witnesses. The Commonwealth further argued that even if Carpenter were applicable, probable cause and exigency excused the search warrant requirement. Subsequently, the trial court denied the motion to suppress finding probable cause and exigency justified obtaining the CSLI data without a warrant.

Moreno was convicted of first-degree murder and felony hit and run by a jury which sentenced him to thirty-eight years in prison. This appeal followed.

ANALYSIS

Moreno contends that the trial court erred by denying his motion to suppress. Specifically, Moreno does not challenge that the police had probable cause, but rather, he contends that the trial court erred by finding that exigent circumstances justified the warrantless search.

On review of the trial court's denial of a motion to suppress, an "appellant bears the burden of establishing that reversible error occurred." Williams v. Commonwealth, 71 Va. App. 462, 474 (2020) (citing Glenn v. Commonwealth, 275 Va. 123, 130 (2008)). "This Court is 'bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them.'" Id. at 475 (quoting Matthews v. Commonwealth, 65 Va. App. 334, 341 (2015)).

"However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." Id. (citing Glenn, 275 Va. at 130). Additionally, "our review includes evidence presented at both the suppression hearing and the trial." Id. (citing Hill v. Commonwealth, 297 Va. 804, 808 (2019)).

At the hearing on Moreno's motion to suppress, Coderre testified that Washburn gave her a description of Moreno and the RAV 4 shortly after the collision. After comparing Washburn's description to Moreno's DMV photo, Coderre suspected that Moreno had been the driver of the RAV 4. Coderre also knew that Washburn had pursued Moreno and tried to stop him by "honking his horn and flashing his lights," but Moreno disregarded Washburn and continued driving.

Following the report of the collision, an officer drove to Moreno's residence, but he was not there. Coderre also called and texted Moreno's phone, but Moreno did not respond. Consequently, Grimsley obtained the real-time CSLI data of Moreno's cell phone through the service provider and located him at a casino in Maryland. The trial court denied Moreno's

- 5 -

motion to suppress, finding that probable cause and exigent circumstances justified the search of Moreno's CSLI data.

"[A]n individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through" cell-site location information. Carpenter v. United States, 138 S. Ct. 2206, 2217 (2018). Therefore, the Supreme Court of the United States has held "that accessing seven days of CSLI constitutes a Fourth Amendment search." Id. at 2217 n.3. Consequently, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." Id. at 2221.

Moreno argues that this holding also applies to the acquisition of real-time cell-site location information. However, the Supreme Court in Carpenter specifically declined to express a view on "real-time CSLI" such as that information at issue in this case, describing its decision as "a narrow one." Id. at 2222. Consequently, even assuming without deciding that the acquisition of real-time cell-site location information generally requires a warrant, for the following reasons we hold that probable cause and exigent circumstances justified the warrantless "ping" of Moreno's cell phone in this case.

"In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Id. at 2221 (quoting Riley v. California, 573 U.S. 373, 382 (2014)). One well-recognized exception applies when "the exigencies of the situation," coupled with probable cause, "make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." Id. at 2222 (quoting Kentucky v. King, 563 U.S. 452, 460 (2011)).

Examples of "[s]uch exigencies include the need to pursue a fleeing suspect . . . or prevent the imminent destruction of evidence." Id. at 2223. Determining whether exigent circumstances exist to justify a warrantless search is not based on a retrospective analysis of the

circumstances; rather, the inquiry is focused on review of the "circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to [search] was made." Robinson v. Commonwealth, 273 Va. 26, 41 (2007) (quoting Verez v. Commonwealth, 230 Va. 405, 411 (1985)). Factors relevant to determining exigent circumstances include:

> the degree of urgency involved and the time required to get a warrant; . . . the possibility of danger to others; . . . whether the offense is serious, or involves violence; . . . [and] the likelihood of escape if the suspects are not swiftly apprehended.

Commonwealth v. Campbell, 294 Va. 486, 495 (2017) (quoting Verez, 230 Va. at 410-11).

Here, the circumstances in this case, as they reasonably appeared to law enforcement, rendered the warrantless search of Moreno's CSLI data objectively reasonable under the Fourth Amendment. Specifically, this is the type of exigent circumstance referred to by the United States Supreme Court in Carpenter. See Carpenter, 138 S. Ct. at 2223 ("While police must get a warrant when collecting CSLI to assist in the mine-run criminal investigation, the rule we set forth does not limit their ability to respond to an ongoing emergency.").

Moreno was not at his residence, and he did not respond to Coderre's call or text message. Thus, when law enforcement obtained the CSLI data, they "need[ed] to pursue" what reasonably appeared to be "a fleeing [murder] suspect." Id. Moreover, Moreno had possession and control of a significant piece of evidence—the RAV 4—and every minute that passed afforded Moreno the opportunity to hide or destroy that evidence and evade apprehension. See Evans v. Commonwealth, 290 Va. 277, 287-88 (2015) ("If the defendant himself has the power to destroy the evidence, the courts assume that he is likely to avail himself of the opportunity." (quoting Ronald J. Bacigal, Virginia Practice: Criminal Procedure § 4:22, at 119-20 (2014-2015 ed.))).

As such, we hold that the acquisition of real-time CSLI data to locate a fleeing murder suspect in an exigent circumstance is permissible under Carpenter. Accordingly, the trial court

did not err by finding that exigent circumstances justified the warrantless search of Moreno's CSLI data.

## CONCLUSION

The trial court did not err when it denied the motion to suppress by finding that exigent circumstances justified the warrantless search of the real-time CSLI data. Accordingly, we affirm.

<u>Affirmed</u>.