COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


MICHAEL BLAKE VAUGHAN
                                                    OPINION BY
v.        Record No. 2312-07-2          CHIEF JUDGE WALTER S. FELTON, JR.
                                              FEBRUARY 24, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
William L. Wellons, Judge

Sandra M. Saseen, Deputy Public Defender (Office of the Public
Defender, on brief), for appellant.

Joshua M. Didlake, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following a bench trial, Michael Blake Vaughan ("appellant") was convicted of

possession of cocaine in violation of Code § 18.2-250. On appeal, he contends the trial court

erred in denying his pretrial motion to suppress evidence of cocaine found in his bookbag. For

the following reasons, we affirm the judgment of the trial court.

I.

"Appellate review of a trial court's denial of a defendant's motion to suppress is de novo

when the defendant claims that the evidence sought to be suppressed was seized in violation of

the Fourth Amendment." Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913

(2008). "In performing this review, we consider the evidence 'in the light most favorable to the

Commonwealth,'" and "'accord the Commonwealth the benefit of all inferences fairly deducible

from the evidence.'" Id. (quoting McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541,

545 (2001), and Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004)).

"[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

At trial, the evidence established that on June 1, 2006, Sergeant Redd of the South Boston Police Department stopped a car operated by Lisa McGuill because it had defective brake lights. Appellant was one of two passengers in the car, and was seated alone in the back seat. During the stop, Sergeant Redd discovered that McGuill was driving on a suspended license. He issued McGuill a summons for driving on a suspended license and another for the defective brake lights. One of the passengers, Doss, arranged for someone to come to their location to drive McGuill's car away, since McGuill's license was suspended. Both passengers had been drinking alcohol.

After Sergeant Redd issued the summonses, he informed McGuill that they "were through with that part of the traffic stop," asked her if she had anything illegal in her car, and asked her if he could search her car. McGuill denied having anything illegal on her person or in the car, and consented to the search of her car. Sergeant Redd asked appellant, who was in the rear seat, and Doss, who was in the right front seat, to get out of the car because "it would be difficult to search with them in the car." He asked them to stand at the rear of the car.

During his search of the car, Sergeant Redd found a "dark-colored" bookbag, having the letters "TH and 1985 on it, like a . . . logo," in the rear seat area. He removed the bookbag and placed it on the trunk of the car where he began to search it. None of the car's occupants, who were standing nearby, objected to its search. During his search of the bookbag, Sergeant Redd found two capped syringes, a stainless steel "half teaspoon that had some white residue on it,"

- 2 -

and "some type of smoking device." One of the syringes found in the bookbag was determined to contain cocaine residue. In the same compartment of the bookbag, he also found "a small pair of hair clippers" engraved with the words "M Vaughan."

## II.

At a pretrial suppression hearing, appellant contended, as he now does on appeal, that Sergeant Redd's search of his bookbag violated his Fourth Amendment right to be free from unreasonable government searches. He argues that it was objectively unreasonable for Sergeant Redd to search the bookbag found in the rear seat area of the car without first asking for his consent to search it, contending that Sergeant Redd knew the bookbag belonged to him prior to the search. At the suppression hearing, Sergeant Redd testified that, some point in time surrounding his search of the bookbag, he asked appellant if it belonged to him and that appellant responded "it was his bag, [and] that he would take responsibility for it." On cross-examination, appellant's attorney asked Sergeant Redd, "After you asked who was the owner of the bag you then searched the bag?" He responded, "That is correct." On redirect, the Commonwealth asked Sergeant Redd, "Ha[d] you already discovered the syringes and stuff before you asked [appellant] if it was his bag?" He answered, "It was kind of an ongoing thing. I don't know . . . that I could put at what time I discovered the item as opposed to what time I asked was it his bag. It was a continuing type of thing."

Even though the record reflects some ambiguity as to when appellant first asserted ownership of the bookbag, we conclude that Sergeant Redd's search of the bookbag did not violate the Fourth Amendment's proscription against unreasonable searches. The record on appeal demonstrates that the officer was objectively reasonable in believing McGuill's unrestricted consent to search the car authorized the search of the bookbag, a closed container, found in the car.

- 3 -

The Fourth Amendment to the United States Constitution does not prohibit consensual searches, as "[t]he touchstone of the Fourth Amendment is reasonableness," and "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Florida v. Jimeno, 500 U.S. 248, 251 (1991) (citing Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring), and Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).

> "A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes. Even where actual authority is lacking, however, a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent.
>
> Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search."

Glenn, 275 Va. at 132-33, 654 S.E.2d at 914 (quoting United States v. Andrus, 483 F.3d 711, 716-17 (10th Cir. 2007) (internal quotation marks and citations omitted)).

"[W]hen a [person] gives [a] general and unqualified consent for an officer to search a particular area, the officer does not need to return to ask for fresh consent to search a closed container located within that area." United States v. Jones, 356 F.3d 529, 534 (4th Cir. 2004) (citing Jimeno, 500 U.S. at 251). In Glenn, the Supreme Court considered "whether [] latent ambiguity about who could access [a container] renders a search [of that container] unreasonable until all ambiguity is removed." Glenn, 275 Va. at 134, 654 S.E.2d at 915. There, the accused lived in his grandfather's home but did not pay rent. His grandfather granted police permission to search his home. In that search, police found evidence in a backpack that incriminated the accused. The backpack, found in a room in the house in which the accused sometimes slept, had "no outward indicia of ownership such as a nametag or monogram and had no locking device." Id. at 128, 654 S.E.2d at 912. The accused contended that "any conclusion by the police that [his

- 4 -

grandfather] had the authority to consent to searching the backpack was objectively unreasonable as a matter of law." Id. at 132, 654 S.E.2d at 914.

In finding the search lawful, the Supreme Court noted that

> "[T]he real question for closed container searches is which way the risk of uncertainty should run. Is such a search permissible only if the police have positive knowledge that the closed container is also under the authority of the person who originally consented to the search . . ., or is it permissible if the police do not have reliable information that the container is *not* under the authorizer's control. We are not aware of any case that has taken the strict view represented by the first of these possibilities.

> \*    \*    \*    \*    \*    \*    \*

> A contrary rule would impose an impossible burden on the police. It would mean that they could never search closed containers within a dwelling (including hotel rooms) without asking the person whose consent is being given ex ante about every item they might encounter. *We note that there is no possibility of such a rule for automobile searches, because the [United States] Supreme Court has already authorized this type of container search in that context.*"

Id. at 135, 654 S.E.2d at 916 (quoting United States v. Melgar, 227 F.3d 1038, 1041 (7th Cir. 2000) (citing United States v. Ross, 456 U.S. 798, 820-21 (1982) ("A lawful search of [a car] generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."))) (second emphasis added).

Here, Sergeant Redd was not required to have "positive knowledge" that consent to search the bookbag found in the backseat area of the car was within the authority of the driver of the car who initially consented to the car's search. The record reflects that the bookbag was left inside the car when the passengers exited, and bore no marks identifying it as appellant's property. We conclude from the record on appeal that it was objectively reasonable for Sergeant Redd to conclude that the driver's unqualified consent to search the car authorized him to search

the bookbag he found inside the car.  See Schneckloth, 412 U.S. at 219; Glenn, 275 Va. at 135, 654 S.E.2d at 916.

Moreover, appellant was aware that McGuill gave the officer unlimited consent to search the car.  When he got out of the car, leaving the bookbag inside, he knew that the car was to be searched.  Once Sergeant Redd placed the bookbag on the car trunk to search it, appellant did not object to its being searched.  Appellant's response to Sergeant Redd's subsequent inquiry of whether the bookbag was his, was that "it was his bag" and "he would take responsibility for it." Sergeant Redd could reasonably believe that appellant's response was not an objection to the search and did not diminish or limit the earlier authority given to the officer to search or continue to search the bookbag.  To the contrary, Sergeant Redd could reasonably interpret appellant's somewhat ambivalent statement that "he would take responsibility for" the bookbag to mean that he clearly understood that the bag was to be searched pursuant to the prior consent and that he (appellant) would take responsibility for anything found during the search.

In Georgia v. Randolph, 547 U.S. 103 (2006), the United States Supreme Court "explained that if the search is otherwise objectively reasonable, a potential objector who raises no objection to the search when he has the opportunity to do so 'loses out.'" Glenn, 275 Va. at 136, 654 S.E.2d at 917 (quoting Randolph, 547 U.S. at 121).  Sergeant Redd's search of the bookbag pursuant to McGuill's consent to search her car was objectively reasonable.  Appellant lost out on his opportunity to remove his bookbag from the scope of the car's search "due to his failure to make any objection despite ample opportunity to do so." See Glenn, 275 Va. at 137, 654 S.E.2d at 917.  See also Jones, 356 F.3d at 534-35 ("[T]he scope of a consent search is not limited only to those areas or items for which verbal permission is granted.  Consent may be supplied by non-verbal conduct as well . . . . [The accused] confirmed the propriety of the search by not objecting [to it] . . . . ").

The facts available to Sergeant Redd at the time he searched the bookbag were sufficient to lead an objectively reasonable police officer to believe that he had authority to conduct that search. We conclude that the trial court did not err in denying appellant's motion to suppress, and therefore affirm appellant's conviction.

<u>Affirmed.</u>