COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Causey and Senior Judge Clements

DAVID LEE PETTIS, JR.

MEMORANDUM OPINION*
v.     Record No. 1133-21-2                                    PER CURIAM
                                                             AUGUST 23, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
S. Anderson Nelson, Judge

(Gregory A. Ullom, Assistant Public Defender, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.


On July 13, 2021, David Lee Pettis, Jr was convicted of two counts of distribution of a

controlled substance, second offense, in violation of Code § 18.2-248, two counts of attempted

possession of a firearm while in possession of drugs, in violation of Code § 18.2-308.4, attempted

possession of a firearm after being convicted of a non-violent felony, in violation of Code

§ 18.2-308.2, and attempted possession with intent to distribute drugs, in violation of Code

§ 18.2-248.03.[1]  Pettis challenges the circuit court's denial of his motion to suppress and the

sufficiency of the evidence to sustain his convictions.[2]

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The circuit court also convicted Pettis of possession of drugs by a prisoner.  He does not
challenge that conviction.

[2] After examining the briefs and record in this case, the panel unanimously agrees that
because "the appeal is wholly without merit," oral argument is unnecessary.  Therefore, we
dispense with oral argument in accordance with Code § 17.1-403(ii)(a) and Rule 5A:27(a).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In doing so, we discard any of Pettis's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On February 14, 2020, Crewe Police Officer Rondell White responded to a report of gunshots at a business in Nottoway County.  Surveillance video from the business depicted a red, four-door Volvo sedan entering the parking lot.  The driver opened his door and fired five shots.  He then closed the door and drove out of the parking lot with a passenger in the front passenger seat.  White recovered five brass cartridges from a .40 caliber gun from the area where the car had stopped.  In addition, after identifying the car's license plate number in the surveillance video, White put out a "be-on-the-lookout" alert (BOL) for the car and Pettis, who was the car's registered owner.

Mecklenburg County Sheriff's Sergeant Andy Ramsey received the BOL in mid-afternoon.  About ninety minutes later, he was notified that a red Volvo was driving recklessly on a nearby highway and had turned onto a side road.  Ramsey drove to the location and found Pettis standing outside a red, four-door Volvo sedan parked on the shoulder with its hood raised, its doors unlocked, and the key in its ignition.  The Volvo's license plate matched that of the car in the BOL, and Pettis matched the descriptions of the suspect in the shooting.  There were no other vehicles or individuals in the area.

The Volvo appeared to be inoperable, but its engine was warm even though it was a cold day. Ramsey asked if Pettis wanted a tow truck called, and Pettis replied that he did.  Pettis told

Ramsey he had come from Nottoway County and was going to South Boston to find work at "a log yard." Ramsey asked if the Volvo was the "only mode of transportation" Pettis had; Pettis replied, "Uh uh, I've got other modes of transportation." Ramsey smelled marijuana coming from the vehicle.

Ramsey asked Pettis if he had weapons and requested permission to check. Pettis did not consent but lifted his shirt to display his waistband. Ramsey told Pettis not to put his hands in his pocket, but Pettis continued doing so, removing them each time Ramsey told him to. Pettis moved around a lot, looked in various directions, and stretched his leg. Accordingly, Ramsey thought Pettis was preparing to flee and handcuffed him and placed him in a patrol car. As he was doing so, backup officers arrived, including a K-9 unit.

Ramsey and Corporal Bruce King searched the unlocked Volvo's passenger compartment, looking in small containers and under the front seats for marijuana. King found a white substance in "baggies" inside two small plastic containers on the front passenger seat, which subsequent laboratory analysis determined was cocaine. Inside a grocery-style bag on the front passenger floorboard, King found scales and a large amount of a white substance, which subsequent laboratory analysis determined was methamphetamine. A .40 caliber handgun was in the pocket on the back of the front passenger seat; subsequent forensic analysis determined that it had fired the five cartridges found at the scene of the shooting. In addition, a cell phone was in the vehicle's front passenger seat beside and under the containers that held cocaine; two other phones were on the floorboard, and a small bag containing marijuana was in a compartment on the dashboard.

Before trial, Pettis moved to suppress the drugs and firearm found in the vehicle as discovered in violation of the Fourth Amendment to the United States Constitution and of the Constitution of Virginia. The circuit court denied Pettis's motion to suppress, finding that Ramsey acted in both community caretaker and investigatory roles when he encountered Pettis. The circuit

court found that there was a "strong smell of marijuana," and Pettis and the vehicle matched the alert that Ramsey had received. The circuit court concluded that Ramsey seized Pettis by handcuffing him, but the seizure was lawful because Ramsey had a reasonable articulable suspicion. Finally, the circuit court found that the search of the Volvo was lawful.

At trial, Investigator Rusty Gordon, whom the circuit court qualified as an expert in narcotics investigations, testified that the 106 grams of methamphetamine found in Pettis's car had a "street value" of about $10,000. The fifteen grams of cocaine found had a "street value" of about $1500. According to Gordon, a person possessing cocaine or methamphetamine for personal use would have "no more" than "two grams," and the quantities recovered from Pettis's vehicle were inconsistent with personal use. In addition, the "scales, baggies, money, multiple cell phones," and pistol also suggested that the drugs were not for personal use. Gordon also testified that some of the text messages extracted from the three cell phones referred to "prices and . . . terminology" related to drug distribution. One text message referred to Pettis by his last name, another contained his address, and a photograph of Pettis was also recovered.

After the close of the evidence and argument by counsel, the circuit court found that the Volvo was the car seen in the surveillance footage of the shooting and "circumstantial evidence strongly indicate[d]" that Pettis was the driver. That evidence included Pettis's request for a tow truck, remarks about "where he's going" and where he thought he was, and the cell phones that were recovered. The circuit court further found that Pettis was in possession of the drugs and the pistol, all of which were within Pettis's reach "in the front passenger seat and in the front passenger seat floorboard and a pocket behind the front passenger seat." This appeal follows.

ANALYSIS

A. Validity of the search

Pettis argues that the search of the Volvo violated the Fourth Amendment because it was not supported by probable cause "as it relates to . . . appellant." He emphasizes that Ramsey did not observe Pettis commit any illegal act or drive the vehicle and that Pettis did not have the Volvo's keys. Further, he argues that although there was a BOL regarding the shooting and a separate report of reckless driving, Ramsey's encounter with Pettis was not a traffic stop but a "community caretaking" encounter. Additionally, Ramsey could not isolate the smell of marijuana to Pettis's person rather than the vehicle. Pettis also argues that Ramsey had no cause to place him in handcuffs because he "did not pose a threat." He emphasizes that Ramsey was awaiting backup and saw no weapons, and Pettis complied each time Ramsey directed him to remove his hands from his pockets.

"When this Court reviews a trial court's ruling on a motion to suppress, 'the appellant bears the burden of showing that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" *Scott v. Commonwealth*, 68 Va. App. 452, 458 (2018) (quoting *Sanders v. Commonwealth*, 64 Va. App. 734, 743 (2015)). Moreover, our "review includes 'evidence adduced at both the trial and the suppression hearing.'" *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019) (quoting *Greene v. Commonwealth*, 17 Va. App. 606, 608 (1994)). "[W]e 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (footnote omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). "However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Id.*

"The Fourth Amendment prohibits only 'unreasonable searches and seizures,' not reasonable ones." *King v. Commonwealth*, 49 Va. App. 717, 723 (2007). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . and "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Saal v. Commonwealth*, 72 Va. App. 413, 426 (2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Further, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559).

The "automobile exception" to the Fourth Amendment permits a warrantless search of a vehicle if an officer "has probable cause to believe that the vehicle contains evidence of a crime." *Duncan v. Commonwealth*, 55 Va. App. 175, 179 (2009). Probable cause "requires *only* a probability or substantial chance of criminal activity, not an actual showing of such activity." *Powell v. Commonwealth*, 57 Va. App. 329, 336 (2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983)).

Ramsey's interaction with Pettis began as a consensual encounter. *See Jones v. Commonwealth*, 52 Va. App. 548, 555-56 (2008) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002))). Very quickly, however, Ramsey detected the odor of marijuana and isolated it as emanating from the Volvo. That odor gave Ramsey probable cause to search the vehicle for drugs. *Duncan*, 55 Va. App. at 179.[3] Ramsey and King searched the vehicle's passenger compartment, looking in containers and spaces that

---

[3] We note that the search was conducted prior to the effective date of Code § 18.2-250.1(F) (current version at Code § 4.1-1302(A)), which prohibited searches based solely on the odor of marijuana.

could hold the marijuana that was the object of their search. *See Vaughan v. Commonwealth*, 53 Va. App. 435, 441 (2009) ("A lawful search of [a car] generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." (alteration in original) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982))).

Thus, the search of Pettis's vehicle was reasonable under the Fourth Amendment because it was supported by probable cause and confined to places in which evidence of the crime could possibly be found. *See Saal*, 72 Va. App. at 426 (stating a reviewing court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" (quoting *Bell*, 441 U.S. at 559)); *see also Vaughan*, 53 Va. App. at 441 (stating a lawful search "extends to the entire area in which the object of the search may be found" (quoting *Ross*, 456 U.S. at 824)). The circuit court therefore properly denied Pettis's motion to suppress the evidence found during the search of his vehicle.[4]

### B. Sufficiency of the evidence

Pettis challenges the sufficiency of the evidence that he possessed the drugs, phone, scales, and firearm found during the search of the vehicle. He asserts that the Commonwealth proved only his "proximity" to the items and did not prove that he exercised dominion and control over the items or the vehicle.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself

---

[4] Pettis's arguments that Ramsey unlawfully seized him do not affect our conclusion that the warrantless search of the Volvo was lawful. Assuming *arguendo* that the seizure of Pettis was unlawful, no evidence admitted at trial was obtained as a result of that seizure.

whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Possession of contraband "may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018). Constructive possession may be established by "evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [contraband] and that the [contraband] was subject to his dominion and control." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). The issue of what constitutes constructive possession "is largely a factual one." *Id.* (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). Accordingly, the circuit court's judgment "will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)).

Although "ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle," other circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband. *Burchette v. Commonwealth,* 15 Va. App. 432, 435 (1992). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently

convincing." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, Pettis claimed authority over the vehicle when he requested that Ramsey call a tow truck. Pettis told Ramsey that he had "other modes of transportation" when Ramsey asked if the Volvo was his only transportation. Further, the Volvo's engine was still warm, despite the cold outside temperature, and Pettis told Ramsey he came from Nottoway County to South Boston trying to find work at "a log yard." The record thus supports the circuit court's finding that Pettis was the driver of the Volvo.

In addition, Pettis was the only person near the Volvo when Ramsey arrived, and it was unlocked with its key in the ignition. *See Ervin v. Commonwealth*, 57 Va. App. 495, 510 (2011) (stating that trial court could consider defendant's "*sole* possession" of vehicle and possession of vehicle's key at time drugs were found in glovebox as indicating defendant's "guilty knowledge" of the drugs). Additionally, the cell phones, including one that was partly underneath the containers that held cocaine, and the containers and bag that held the drugs and scales all were in plain view on the front passenger seat or floorboard. The phones contained text messages that referred to Pettis by his last name, his address, and "prices and . . . terminology" related to drug distribution. *See Bolden*, 275 Va. at 146-47 (affirming finding of constructive possession of firearm inside a "grocery bag [that was] in plain view" either "right beside" or under the defendant, even though the officer had to pick up the bag and look inside it to determine that it held a firearm).

Finally, although Pettis speculates that the contraband found in the car could have belonged to the person who was in the passenger seat, we have held repeatedly "that drugs are a

thing of value people are unlikely to abandon or ship to another without warning." *Ward v. Commonwealth*, 47 Va. App. 733, 753 (2006); *see also Watts v. Commonwealth*, 57 Va. App. 217, 233 (2010) (noting that "settled principles provide that people do not relinquish control of items of value like drugs or leave them in places where others might find them"); *Powell v. Commonwealth*, 27 Va. App. 173, 178 (1998) (assessing the sufficiency of the evidence and noting that "the drugs were 'something of significant value and not something that one is likely to have abandoned or carelessly left in the area" (quoting *Collins v. Commonwealth*, 13 Va. App. 177, 180 (1991))); *Brown v. Commonwealth*, 15 Va. App. 1, 9 (1992) (*en banc*) ("[T]he finder of fact may infer from the value of drugs found on premises owned or occupied by an individual that it is unlikely anyone who is a transient would leave a thing of great value in a place not under his dominion and control."). Thus, the circuit court reasonably could conclude that an unspecified stranger did not leave a firearm and valuable, albeit illegal, substances found in the car. Furthermore, one can possess property that one does not own. Even if the firearms and drugs belonged to the unknown passenger, the above circumstances supported the conclusion that Pettis exercised dominion and control over the contraband found in the Volvo and was aware of its presence and character. *Burchette*, 15 Va. App. at 435.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*