COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Senior Judge Clements
Argued by videoconference

PUBLISHED

HUNTER LEE, III

                                             OPINION BY
v.       Record No. 0053-23-2        JUDGE RANDOLPH A. BEALES
                                              MAY 7, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge[1]

Andrew J. Cornick (Andrew J. Cornick, LLC, on brief), for
appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following the Circuit Court of Spotsylvania County's denial of his motion to suppress

evidence, Hunter Lee, III entered a conditional guilty plea to possessing with intent to distribute a

Schedule I or II controlled substance, in violation of Code § 18.2-248.  On appeal, Lee challenges

the trial court's denial of his motion to suppress the evidence that police discovered during a search

of his backpack and the items in it.

## I.  BACKGROUND

"Under familiar principles of appellate review, we will state 'the evidence in the light most

favorable to the Commonwealth, [as] the prevailing party in the trial court.'"  *Sidney v.*

*Commonwealth*, 280 Va. 517, 520 (2010) (quoting *Murphy v. Commonwealth*, 264 Va. 568, 570

(2002)).

---

[1] The Honorable William E. Glover presided at the plea and sentencing hearing, and the
Honorable Ricardo Rigual presided at the suppression hearing.

Deputy Craig Heywood of the Spotsylvania County Sheriff's Office testified at the suppression hearing that on June 17, 2021, an anonymous caller reported seeing a "male assault a female, that he had a handgun with him, that he was arguing with the female about getting a bag out of the car that had some drug paraphernalia in it." The caller indicated that the handgun was in the suspect's waistband. The caller also reported that the suspect was "wearing a black and gray shirt carrying a bookbag," and the caller "had last seen him walking towards 7-Eleven." Deputy Heywood testified that he responded to the "call for service in reference to an alleged domestic called in by a third party." He noted that the apartment complex where the call originated was "[a] hundred yards" from the 7-Eleven convenience store.

Footage from Deputy Heywood's body-worn camera was admitted into evidence without objection as Commonwealth's Exhibit 2. The video showed Deputy Heywood "pulling into the 7-Eleven at the Hilltop area of Spotsylvania County at the intersection of Leavells Road and Courthouse Road." Deputy Heywood entered the 7-Eleven and noticed Lee, who matched the suspect's description and was carrying a backpack. Deputy Heywood then exited the store and encountered First Sergeant Michael Collins, his supervisor on duty who had just arrived. Deputy Heywood told First Sergeant Collins that he could not determine whether Lee had a firearm in his waistband because Lee was "wearing a baggy shirt," so he planned to confront Lee when Lee exited the store to determine "if he's got a gun."

Shortly thereafter, Lee walked out of the 7-Eleven carrying a backpack, and at Deputy Heywood's request, Lee approached Heywood. When Heywood asked him whether he lived in the nearby apartment complex, Lee responded, "No, sir. I actually just came from my girl's house." Lee acknowledged that there had been a confrontation between him and his girlfriend. Deputy Heywood then asked, "Where's the gun at?" Lee stepped back with his hands raised above his shoulders and replied, "Woah, woah. Look, I'm a felon. I ain't got no gun." Deputy Heywood

then asked, "Do you mind if I check you real quick just to make sure you don't have any weapons?"[2] Lee indicated that was all right with him. He then raised his arms higher above his head, and he complied with Deputy Heywood's request to "turn around please." Deputy Heywood remarked, "Just for your safety and mine, I want to make sure you ain't got no gun." While First Sergeant Collins stood nearby, Deputy Heywood patted down Lee's clothing, but he did not find any weapons. He also lifted Lee's backpack to feel "if there was a larger handgun in there," but he was unable to make that determination. During the frisk of Lee for weapons, Lee exclaimed that "there's no way" he would have a gun.

First Sergeant Collins asked Lee, "Is there anything in that backpack that we need to know about?" Lee replied, "No. I got my pills. That's it." First Sergeant Collins then inquired, "Can he [Deputy Heywood] check it [the backpack]? Do you mind if he checks it?" In response, Lee removed the backpack from his shoulders and handed it to Deputy Heywood. Before searching the backpack, Deputy Heywood asked Lee, "What's in your front left pocket there?" Lee removed several plastic baggies from that pants pocket and stated, "It's sandwich bags. Like I just came from a hotel." Lee then watched Deputy Heywood search his backpack.

Deputy Heywood testified that he unzipped the backpack and found additional plastic baggies and a "set of digital scales" in "a zippered outside pocket of the bookbag." He noted that digital scales "can be associated with distribution and/or purchase to weigh and make sure the amount of the transaction is accurate per the price," and he explained that plastic baggies are "often times used in the distribution of narcotics as a container." He also testified, "Baggies with residue usually indicate that that person has recently consumed some sort of illegal substance. A large quantity of unused baggies, as in my experience in the past tend to point more towards distribution."

---

[2] During cross-examination, Deputy Heywood stated that his major concern during the investigation was whether Lee possessed a gun.

When Deputy Heywood found a prescription pill bottle in the backpack, Lee quickly exclaimed, "That's for my heart." However, Lee did not object to Deputy Heywood's ongoing search. While Deputy Heywood continued to search the backpack, Lee identified himself to First Sergeant Collins. Lee then explained that the argument with his girlfriend had been about money, and he disclosed that he had been previously convicted of "possession with intent to distribute." When Deputy Heywood indicated to Lee that he suspected him of distributing narcotics, Lee denied that he was currently selling drugs or that the plastic baggies and digital scales found in his backpack were packaging materials related to drug distribution.

Deputy Heywood then removed a white pill bottle from Lee's backpack, searched it, and determined that it apparently contained dietary supplements. He then searched the prescription pill bottle that Lee had claimed contained his heart medication. Deputy Heywood testified that inside the prescription pill bottle were five plastic baggies that each contained "a white powder rocklike substance" resembling "crack cocaine." He noted that there were also several pills "being pressed down by the plastic baggies." Deputy Heywood then collected the pill bottle containing the suspected drugs and arrested Lee for possessing with intent to distribute a Schedule I or II controlled substance. Subsequent forensic testing determined that the "off-white chunky material" found in the pill bottle contained Eutylone, a Schedule II controlled substance.

Lee, by counsel, filed a motion to suppress the drugs that Deputy Heywood found in the pill bottle inside Lee's backpack on the basis that "his belongings were searched without a warrant or other legal justification, outside the scope of consent . . . he had given." At the suppression hearing, defense counsel argued that Deputy Heywood's warrantless search of the pill bottle violated the Fourth Amendment because no exception to the warrant requirement applied. Defense counsel asserted that once Lee handed his backpack to Deputy Heywood, "There's no probable cause to arrest at that point, and there's no search incident to arrest when he goes beyond the scope of the

consent, which was, you can search me for a gun. Into the pill bottle, any of that other stuff is beyond the scope of the consent given by Mr. Lee through his actions, his acquiescence and his submission to the officers." Defense counsel then argued, "[I]t doesn't take long to open up a backpack, look in and see that there's no gun. Pulling stuff out individually, rummaging through, so forth, pulling the pill bottle out, all of that is beyond the scope of the consent that was clearly given about a conversation that was definitely about a gun."

The trial court denied Lee's motion to suppress the evidence, and it found that Lee "consented to the search, so anything they find — by his acquiescence he did consent to the search of his backpack, so it's fair game." The trial court further found that the officers "had probable cause after seeing what was in the bag almost immediately, it didn't take very long, started pulling out empty baggies, and the officer says right on the video that this looks like distribution with the scales and empty bags." The trial judge determined that "at that point I think they have probable cause that there's some kind of drug paraphernalia, scales, empty baggies, evidence of a crime, probable cause that a crime exists, and sufficient cause at that point to detain and arrest him for that, not knowing exactly what might be in the bag." The trial court subsequently convicted Lee on a conditional guilty plea of possessing with intent to distribute a Schedule I or II controlled substance. Lee appeals the trial court's denial of his motion to suppress evidence.

## II. ANALYSIS

On appeal to this Court, Lee argues, "The trial court erred by failing to grant Lee's motion to suppress evidence seized from his backpack, which was searched beyond the scope of Lee's consent without a warrant or a legitimate exception to the warrant requirement."[3]

---

[3] Lee does not challenge that his initial encounter with Deputy Heywood and First Sergeant Collins outside the 7-Eleven convenience store was consensual.

The Supreme Court has often stated, "The defendant has the burden to show that, when viewing the evidence in the light most favorable to the Commonwealth, the trial court's denial of the motion to suppress was reversible error." *Sidney*, 280 Va. at 522. "We review de novo the trial court's application of the law to the particular facts of the case." *Branham v. Commonwealth*, 283 Va. 273, 279 (2012). However, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (*en banc*) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the Supreme Court has consistently held, "[W]arrantless searches are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions." *Megel v. Commonwealth*, 262 Va. 531, 534 (2001) (citing *Thompson v. Louisiana*, 469 U.S. 17, 19-20 (1984)). A consensual search is one of those well-established exceptions to the Fourth Amendment's warrant requirement. *Brooks v. Commonwealth*, 282 Va. 90, 95 (2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). As this Court has made clear, "Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances." *Bynum v. Commonwealth*, 23 Va. App. 412, 418 (1996) (citing *Limonja v. Commonwealth*, 8 Va. App. 532, 540 (1989) (*en banc*), *cert. denied*, 495 U.S. 905 (1990)).

Consent to search may be express or implied. *Vaughan v. Commonwealth*, 53 Va. App. 435, 442 (2009). This Court has repeatedly held, "A consensual search is reasonable if the search is within the scope of the consent given." *Edwards v. Commonwealth*, 38 Va. App. 823,

827 (2002) (quoting *Grinton v. Commonwealth*, 14 Va. App. 846, 850 (1992)). "The scope of a person's consent is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did." *Grinton*, 14 Va. App. at 851.

In addition, the Supreme Court has explained, "The scope of a search is generally defined by its expressed object." *Brooks*, 282 Va. at 95. However, "[a] suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Lawrence v. Commonwealth*, 17 Va. App. 140, 145 (1993) (quoting *Florida v. Jimeno*, 500 U.S. 248, 252 (1991)). "The scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched." *Grinton*, 14 Va. App. at 851. "Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent." *Lawrence*, 17 Va. App. at 146 (citations omitted).

Here, Deputy Heywood searched the backpack and its contents without a warrant. However, Deputy Heywood did not exceed the scope of Lee's consent to search the contents of his backpack by searching the white bottle of dietary supplements or the prescription pill bottle. *See Vaughan*, 53 Va. App. at 440 ("[W]hen a [person] gives [a] general and unqualified consent for an officer to search a particular area, the officer does not need to return to ask for fresh consent to search a closed container located within that area." (alterations in original) (quoting *United States v. Jones*, 356 F.3d 529, 534 (4th Cir. 2003))).

The record established that although Deputy Heywood and First Sergeant Collins were primarily concerned about whether Lee possessed a firearm, Sergeant Collins's request for Lee's consent to search Lee's backpack was not limited to just firearms. After Deputy Heywood searched Lee's person for weapons, Sergeant Collins asked, "Is there *anything* in that backpack

that *we need to know about*?"  (Emphases added).  Lee replied, "No.  I got my pills.  That's it."

Sergeant Collins then asked, "Can he [Deputy Heywood] check it [the backpack]?  Do you mind if

he checks it?"  In response, Lee handed his backpack to Deputy Heywood.

From that exchange, it was objectively reasonable for Deputy Heywood to infer that Lee

impliedly consented to a search of his backpack.  *Cf. Bynum*, 23 Va. App. at 417 (finding that the

defendant "expressly agreed to a search of his person" by "placing his hands against the wall

without prompting" by the officer).  Given the general, open-ended nature of Sergeant Collins's

request for consent to search the backpack after Lee mentioned his pills, coupled with Lee's

failure to specify any restrictions, it was objectively reasonable for Deputy Heywood to infer that

Lee provided a "general and unqualified consent" to search the backpack and its contents for

anything illegal.  *Vaughan*, 53 Va. App. at 440 (quoting *Jones*, 356 F.3d at 534).

Furthermore, Lee's "passive acquiescence" while Deputy Heywood first searched the

white bottle that apparently contained dietary supplements and then the prescription pill bottle

that were both found inside the backpack affirmed that the containers in the backpack were

"within the scope of his consent."  *Edwards*, 38 Va. App. at 830 (concluding that "the search of a

person includes containers held by the person").  Just before Deputy Heywood searched the pill

bottles, Lee denied that he was selling narcotics, and Lee essentially denied that the digital scales

and plastic baggies found inside his backpack were related to illicit drug packaging.  Lee was

aware that, at that point, Deputy Heywood suspected him of selling narcotics, and he could

reasonably infer that Deputy Heywood sought evidence of drug distribution when the officer

began searching the pill bottles.  However, Lee did not object, withdraw his consent, or state in

any way that the search had at that point exceeded the scope of his consent.  *See Grinton*, 14

Va. App. at 851 ("The scope of a search may be further defined during the course of the search

by the passive acquiescence of the person whose property is being searched.").  *See also Carter*

*v. Commonwealth*, 79 Va. App. 329, 344 (2023) (finding that where a defendant's prior consent to search was clearly limited only to a search for weapons, rather than consent to a general search, the defendant did not passively acquiesce to a general search that exceeded the scope of his consent to a limited weapons search).  Therefore, the record demonstrates that Deputy Heywood did not exceed the scope of Lee's consent to search his backpack by searching the pill bottles that were in the backpack for illegal narcotics.  Consequently, we cannot conclude that the trial court erred in denying Lee's motion to suppress the evidence obtained from that search of the backpack and its contents.[4]

### III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the trial court's judgment, and we affirm Lee's conviction.

*Affirmed.*

---

[4] "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018).  Given our holding on the issue of consent, we need not reach the trial court's conclusion that the search incident to arrest exception applied. *Id.*