COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia

JACKIE LAVONNE MYERS

v.     Record No. 0419-24-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY GRACE O'BRIEN
MARCH 4, 2025

FROM THE CIRCUIT COURT OF PAGE COUNTY
Clark A. Ritchie, Judge

Caleb J. Routhier (Miller, Earle & Shanks, PLLC, on briefs), for
appellant.

Anderson W. Peake, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Upon her conditional guilty plea, the circuit court convicted Jackie Lavonne Myers of

possessing methamphetamine, a Schedule II controlled substance, in violation of Code

§ 18.2-250. Myers contends that the court erred by denying her pre-trial motion to suppress

evidence seized from her purse after a traffic stop. Because we find that the driver of the car did

not have authority to consent to the search of Myers's purse, we reverse and remand for further

proceedings.

BACKGROUND

"On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."

*Knight v. Commonwealth*, 61 Va. App. 297, 302 (2012) (quoting *Slayton v. Commonwealth*, 41

Va. App. 101, 103 (2003)).

While sitting in his patrol vehicle in a 7-Eleven parking lot, Virginia State Trooper Christopher Greene was watching a car parked at a gas pump. Trooper Greene saw three people "constantly" entering and exiting the car, before one passenger, later identified as Myers, "[got] in and lay down in the back seat." Trooper Greene ran the license plate number through a law-enforcement database and discovered that the driver's license of the registered owner, a male who was "about age fifty, somewhere in that range," was suspended. The database search also provided the registered owner's height and weight, but the trooper did not access the owner's photograph.[1] Although he saw the driver walk around the car at the gas pump, the trooper—due to his poor eyesight and scratched glasses—could not determine the driver's age. When the car left the parking lot, he followed it and immediately initiated a traffic stop.

Trooper Green approached the car and noted that the driver appeared to be "a younger male." But he continued the stop because he previously had encountered people who looked "completely different" from their age. He told the driver why he stopped the car and asked for each person's identification. The driver explained that the car belonged to his father, whose driver's license was suspended. Almost simultaneously, Trooper Greene asked for permission to search the vehicle; the driver acquiesced without hesitation. During the encounter, Trooper Greene observed Myers making "furtive movements" in the back seat.

After the driver consented to the vehicle search, the trooper "had all the individuals step out and sit on an embankment." Half-way through the search, Trooper Greene checked the status of the driver's license. While searching the car, he found a bag on the floorboard of the back seat. Trooper Greene's dashboard footage shows him searching a bag while in the back seat of the car. He then removed a woman's purse from the car, which he later described as a

---

[1] Trooper Greene testified that he was "required to press a whole other button" to access a photograph of the registered owner, which he only did when the driver did not "have their driver's license on them."

"handbag." When the trooper asked whose bag it was, Myers advised that it was hers. At no point did Trooper Green ask for Myers's consent to search her purse, nor did Myers object. The trooper discovered a ziplock bag containing 0.0746 gram of methamphetamine in the purse.

Myers moved to suppress the methamphetamine evidence, arguing it was obtained in violation of her Fourth Amendment right against unreasonable searches and seizures. She contended that the reasonable suspicion for the traffic stop was dispelled when the driver did not meet the description of the registered owner of the vehicle, and the trooper unlawfully extended the traffic stop when he asked for consent to search the car. She also asserted that, although the driver consented to the vehicle search, Trooper Greene did not have valid consent to search Myers's purse. The court denied the motion to suppress.

Under Code § 19.2-254, Myers entered a conditional guilty plea to possession of methamphetamine and reserved her right to appeal the issues raised in her suppression motion.

ANALYSIS

I. Standard of Review

"Appellate review of a trial court's denial of a defendant's motion to suppress is de novo when the defendant claims that the evidence sought to be suppressed was seized in violation of the Fourth Amendment." *Vaughan v. Commonwealth*, 53 Va. App. 435, 437 (2009) (quoting *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)). "While 'the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure,' the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error." *Whitfield v. Commonwealth*, 265 Va. 358, 361 (2003) (quoting *Simmons v. Commonwealth*, 238 Va. 200, 204 (1989)).

The constitutionality of a search under the Fourth Amendment "involve[s] questions of both law and fact." *Lawson v. Commonwealth*, 55 Va. App. 549, 554 (2010) (quoting *McGee v.*

- 3 -

*Commonwealth*, 25 Va. App. 193, 197 (1997) (en banc)). In our review, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015) (quoting *McGee*, 25 Va. App. at 198). Ultimately, we "independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004).

## II. The Stop

Myers first argues that the court erred in denying her motion to suppress because Trooper Greene impermissibly stopped the car in which she was a passenger.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Amendment is not "a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *Williams v. Commonwealth*, 49 Va. App. 439, 447 (2007) (en banc) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). Accordingly, the Fourth Amendment allows police to conduct brief investigatory stops that meet the requirements established in *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A *Terry* stop is a "brief, minimally intrusive" detention of a person, *Middlebrooks v. Commonwealth*, 52 Va. App. 469, 476 (2008) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 421 (2003)), when the officer has a "reasonable suspicion, based on objective facts, that criminal activity may be afoot," *Mason v. Commonwealth*, 291 Va. 362, 367 (2016). A passenger seized in a traffic stop has standing to "challenge the constitutionality of the stop." *Brendlin v. California*, 551 U.S. 249, 251 (2007); *see also Atkins v. Commonwealth*, 57 Va. App. 2, 12 (2010).

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Bland v. Commonwealth*, 66 Va. App. 405, 413 (2016) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)); *see also Kansas v. Glover*, 589 U.S. 376, 380 (2020). "Whether an officer has a reasonable suspicion to justify . . . a detention is 'based on an assessment of the totality of the circumstances.'" *Hill v. Commonwealth*, 68 Va. App. 610, 619 (2018) (alteration in original) (quoting *Banham v. Commonwealth*, 283 Va. 273, 280 (2012)), *aff'd*, 297 Va. 804 (2019). "The possibility that an officer ultimately may prove to be mistaken or that there may be an innocent explanation for the facts giving rise to the officer's suspicion does not negate, in and of itself, the officer's reasonable, articulable suspicion." *Mitchell v. Commonwealth*, 73 Va. App. 234, 247 (2021). The purpose of a *Terry* stop is "to permit an officer with reasonable suspicion . . . to quickly confirm or dispel that suspicion." *Davis v. Commonwealth*, 35 Va. App. 533, 539 (2001).

It is well settled that "[a] police officer may stop a motor vehicle, without probable cause, for investigatory purposes if [the officer] possesses a reasonable and articulable suspicion 'that a motorist is unlicensed . . . or that either the vehicle or an occupant is otherwise subject to seizure for violation of law.'" *Hoye v. Commonwealth*, 18 Va. App. 132, 134 (1994) (second alteration in original) (quoting *Bulatko v. Commonwealth*, 16 Va. App. 135, 136-37 (1993)). "States have a 'vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles [and] that licensing, registration, and vehicle inspection requirements are being observed.'" *Glover*, 589 U.S. at 381 (alteration in original) (quoting *Delaware v. Prouse*, 440 U.S. 648, 658 (1979)).

In *Glover*, the United States Supreme Court upheld the validity of a traffic stop when a police officer ran the license plate of a vehicle and learned that the registered owner's driver's license was revoked. *Id.* at 378. The Court found it was a "reasonable inference" that the registered

owner would be driving the vehicle, holding that when "the officer lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable." *Id.* at 378, 381.

> [T]he presence of additional facts might dispel reasonable suspicion. For example, if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not "raise a suspicion that the particular individual being stopped is engaged in wrongdoing."

*Id.* at 386 (citation omitted) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

Myers argues that immediately upon Trooper Greene's observation that the driver was a young man, not the 50-year-old registered owner of the vehicle, any reasonable suspicion justifying the stop was dispelled and "the lawful seizure ended."

But we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Cantrell*, 65 Va. App. at 56 (quoting *McGee*, 25 Va. App. at 198). Here, Trooper Greene testified that he was unable to ascertain the driver's age, height, or weight at the gas pump due to his bad eyesight and because his glasses were scratched. He added that although the driver looked younger than 50 years old, he had previously stopped people that looked "completely different" from their age. After considering that evidence, the court was "not completely convinced that it was as . . . evident to the officer that [the driver] was a person who was obviously a particular age or not." Because we are bound by the court's findings of fact, we cannot now find that Trooper Greene had "information negating an inference that the owner is the driver of the vehicle." *Glover*, 589 U.S. at 378.

Myers also contends that Trooper Greene unlawfully extended the stop when he asked to see the identification of everyone in the car and requested consent to search the vehicle.

The Fourth Amendment does not prohibit consensual searches. "'The touchstone of the Fourth Amendment is reasonableness,' and 'it is no doubt reasonable for the police to conduct a

search once they have been permitted to do so.'" *Vaughan*, 53 Va. App. at 439 (quoting *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991)). Stated otherwise, "consensual encounters . . . do not implicate the Fourth Amendment." *McGee*, 25 Va. App. at 198. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). While pursuing the purpose of a traffic stop, officers may inquire into matters unrelated to the underlying traffic infraction or the safety of the officers, *id.*, as long as they "do not measurably extend the duration of the stop," *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). A detention becomes unlawful "when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354.

Here, Trooper Greene's request to search the vehicle occurred nearly simultaneously with his request for identification. Trooper Greene asked to search the car before he had even collected the identifications and before he had checked the status of the driver's license. *Cf. id.* (holding that a police officer unconstitutionally extended a traffic stop when conducting a search with a dog after issuing a warning for driving on the shoulder of the road); *Matthews v. Commonwealth*, 65 Va. App. 334, 346 (2015) (holding that a stop was unlawfully extended when the police officer requested consent after issuing a warning for a dangling object). The driver readily acquiesced to the search; he did not hesitate or equivocate. Although the request to search the car had nothing to do with Trooper Greene's reason to initiate the traffic stop, it did not unlawfully extend the stop because "the Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention," such as checking driver's licenses. *Rodriguez*, 575 U.S. at 354; *see also Thomas v. Commonwealth*, 57 Va. App. 267, 277 (2010).

Here, the consent to the search was given nearly simultaneously with the request to see identifications, and the purpose of the traffic stop had not been concluded.

### III. Third-Party Consent to Search

Myers also argues that the driver did not have the authority to consent to the search of her purse.

As noted above, the Fourth Amendment does not prohibit consensual searches. *See Vaughan*, 53 Va. App. at 439 (quoting *Jimeno*, 500 U.S. at 250-51). But a third party who consents to a search must have either "actual or apparent authority over the object of the search" for the search to be constitutional. *Glenn*, 275 Va. at 132. Because it is undisputed that the purse belonged to Myers alone, the driver is such a third party. The narrow issue before us then is whether the driver had either actual or apparent authority to consent to the search of Myers's purse.

> A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes. Even where actual authority is lacking, however, a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent.
>
> Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search.

*Id.* at 132-33 (quoting *United States v. Andrus*, 483 F.3d 711, 716-17 (10th Cir. 2007)).

In *Glenn*, the defendant was living with his grandfather, who consented to a search of his home. *Id.* at 128. The police discovered evidence connected to a robbery in the defendant's unlabeled backpack found in a bedroom. *Id.* The defendant moved to suppress the evidence because his grandfather did not have authority to consent to the search of his backpack. *Id.* at 128-29. The Supreme Court held that although the defendant's grandfather lacked actual authority to consent to a search of the bag, he had apparent authority because "[t]he backpack bore no indicia

- 8 -

of ownership, evidenced no limitations on access, had no characteristics that reflected a use by reason of age or gender, and was located in a place open to all occupants of the house." *Id.* at 133-34. Accordingly, "it was objectively reasonable for the police officer to conclude [the grandfather's] consent to search included the authority to consent to a search of the backpack." *Id.* at 134. In a footnote, the Court distinguished *Krise v. State*, 746 N.E.2d 957 (Ind. 2001), which held that a man could not consent to the search of a woman's purse found in his apartment. *Glenn*, 275 Va. at 136 n.3. In doing so, the Court noted that the "police could not have reasonably believed the boyfriend had the authority to consent to a search of the girlfriend's purse." *Id.*

Here, the driver had no actual authority over the purse. He did not own or control it. *Cf. id.* at 133 (holding that where a bag exclusively belonged to the defendant, who lived in his grandfather's home, the grandfather did not have actual authority to consent to a search of the bag located in the home). This does not end our inquiry, however, because the search could still be considered reasonable if the driver had apparent authority to consent to the search of Myers's purse.

As in *Glenn*, the purse was "located in a place open to all occupants" when it was found on the floorboard of the car. *Glenn*, 275 Va. at 134. But unlike the defendant's backpack in *Glenn*, Myers's purse bore a clear "indic[ation] of ownership." *Id.* at 133. The driver was male, and dashboard camera footage confirms that the item was a woman's purse. *See also id.* at 136 n.3 (opining that the search of a woman's purse pursuant to the consent given by a man would not be reasonable). Moreover, the purse was located on the back seat floorboard, close to the female passenger, and not the male driver, who did not claim ownership of the purse, further suggesting that the purse belonged to Myers and not the driver. Thus, we conclude that it was not objectively reasonable for Trooper Greene to assume the driver's consent encompassed Myers's purse.

The Commonwealth relies on *Vaughan* to contend that Myers's failure to object to the search of her purse "undeniably affirmed Trooper Green's reasonable belief that the bag fell within the scope of the consent the driver gave." Its reliance is misplaced.

In *Vaughan*, a driver consented to a search of his car, during which a police officer found a bookbag in the backseat. *Vaughan*, 53 Va. App. at 437-38. While searching the bookbag, the officer asked to whom it belonged. *Id.* at 438-39. The defendant, who was a passenger in the car, answered that the bag belonged to him and "he would take responsibility for it." *Id.* at 439. The defendant was subsequently convicted for possession of cocaine found in the bag. *Id.* at 437.

On appeal, the defendant argued that the court erred in denying his motion to suppress the evidence obtained from the search. *Id.* This Court held that, because "the bookbag was left inside the car when the passengers exited and bore no marks identifying it as appellant's property," the police officer had an "objectively reasonable" basis to conclude that the driver's consent encompassed the bookbag. *Id.* at 441. The Court continued that, in any case, the defendant "lost out on his opportunity to remove his bookbag" from the search because "if a search is otherwise objectively reasonable, a potential objector who raises no objection to the search when he has the opportunity to do so 'loses out.'" *Id.* at 442 (quoting *Glenn*, 275 Va. at 136).

*Vaughan* requires that the search must be "otherwise objectively reasonable" for a defendant's failure to object to amount to implicit consent. *Id.* That is not the case here. The item searched was a woman's purse, not a nondescript backpack or bookbag as in *Vaughan* or *Glenn*. Accordingly, the purse bore an "indic[ation] of ownership." *Glenn*, 275 Va. at 133. It was not objectively reasonable for Trooper Greene to conclude that the consent to the search given by the male driver extended to a woman's purse. Myers's failure to object to Trooper Greene's search of her purse is thus inconsequential. Further, unlike in *Vaughan*, Myers made no specific statement that she would "take responsibility" for the purse, which could have been construed by Trooper

- 10 -

Green as giving or affirming consent to the search; she merely advised that it was hers. Because the search was not objectively reasonable, it violated Myers's Fourth Amendment rights. We conclude that the court erred by denying Myers's motion to suppress the evidence seized during the search.[2]

CONCLUSION

For these reasons, the court did not err in finding that the trooper had reasonable suspicion to stop the car and that he did not unlawfully extend the stop. But because the driver did not have authority to consent to the search of Myers's purse, we reverse the circuit court's denial of Myers's suppression motion and remand for further proceedings.

*Reversed and remanded.*

---

[2] Whenever we find error, we must determine whether the error was harmless. Rule 3A:2(a); Code § 8.01-678. "The harmless error standard" regarding constitutional error asks: "Is it clear beyond a reasonable doubt that a rational [factfinder] *would have* found the defendant guilty absent the error?" *Commonwealth v. White*, 293 Va. 411, 422 (2017) (alteration in original) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). Here, apart from Trooper Greene's stop and discovery of the methamphetamine, no other evidence was proffered by the Commonwealth. We therefore conclude the error was not harmless.